INVESTORS TITLE INSURANCE CO. v. DAVID F. HERZIG, JERRY S. CHESSON, SOUTHEASTERN SHELTER CORPORATION, LEE L. CORUM, AND EVERETT, CREECH, HANCOCK & HERZIG, A PARTNERSHIP

No. 28PA91

(Filed 27 January 1992)

1. **Unfair Competition § 1 (NCI3d)— unfair practice claim—not assignable**

A claim for unfair practices arising from a fraudulent title insurance certification was not assignable because the causes of action of conspiracy to commit fraud and unfair practice are personal in nature. The legislative intent in enacting Chapter 75 of the North Carolina General Statutes was to establish an effective cause of action for aggrieved consumers and to promote good faith and provide a method to maintain ethical standards of dealings between persons engaged in business, thereby achieving the ultimate goal of protecting the consuming public. Assignability of this claim would be offensive to both legislative objectives.

**Am Jur 2d, Assignments §§ 27, 34, 40; Monopolies, Restraints of Trade, and Unfair Trade Practices § 735.**

2. **Subrogation § 1 (NCI3d) — title insurance claim — amount paid by insurance company**

Plaintiff title insurance company was entitled to recover the amount paid to a bank arising from a fraudulent title certification. Plaintiff became subrogated to the bank's claims against defendants to the extent of its payment to the bank.

**Am Jur 2d, Insurance §§ 1794, 1795, 1800.**

3. **Evidence and Witnesses § 1987 (NCI4th) — deposition in prior proceeding — absent witness — admissible**

The trial court did not err in an action arising from an attorney's fraudulent title insurance certification by admitting as evidence the deposition of the attorney in a separate foreclosure proceeding arising from the same action. The availability test in the former testimony exception to the hearsay rule was met and, while defendant Southeastern contends that it was not a party to the foreclosure proceeding and therefore did not have the proper motive while cross-examining the attorney for that deposition to be admitted in this action, Southeastern was not only present at the deposition but also had the opportunity and motive to develop testimony by cross-examination and actively did so. N.C.G.S. § 8C-1, Rule 804; N.C.G.S. § 1A-1, Rule 32(a).

**Am Jur 2d, Depositions and Discovery §§ 181, 189, 190.**

**Admissibility in evidence of deposition as against one not a party at time of its taking. 4 ALR3d 1075.**

4. **Evidence and Witnesses § 827 (NCI4th) — copy of document — authenticity — admissible**

The trial court did not err in an action arising from a fraudulent title insurance certification by allowing plaintiff to introduce a duplicate of a trust agreement between two of the defendants as evidence of a conspiracy. Plaintiff satisfied the requirements of authenticity by providing evidence sufficient to support a finding by the jury that the trust agreement shows the basis of an agreement between two defendants. All the facts contained in the duplicate of the trust agreement were proven through other sources, and while the testimony of defendant Southeastern's president was inconsistent as to

INVESTORS TITLE INSURANCE CO. v. HERZIG

[330 N.C. 681 (1992)]

the signing of various contracts, the credibility of his testimony was for the jury. N.C.G.S. § 8C-1, Rule 901(a).

**Am Jur 2d, Evidence §§ 849-852.**

5. **Evidence and Witnesses § 839 (NCI4th) — copy of document — admissible**

A duplicate trust agreement was admissible in an action arising from a fraudulent title insurance certification where the court found that the original was lost, destroyed, or in the exclusive possession of another defendant, plaintiff was not a party to the agreement and did not have the original, plaintiff took extensive measures to secure the presence of the defendant who was believed to be in sole possession of the original of the trust agreement, and the jury made the final decision on whether the duplicate was convincing evidence that a conspiracy existed between the defendants. N.C.G.S. § 8C-1, Rule 1004(2).

**Am Jur 2d, Evidence §§ 459-463, 467.**

6. **Conspiracy § 1 (NCI4th) — fraudulent title certification — conspiracy — instructions**

The trial court did not err in an action arising from an attorney's fraudulent title insurance certification by giving a peremptory instruction on conspiracy where the court found that one defendant had committed an act constituting an unfair or deceptive practice, the jury still had to decide whether defendant Southeastern conspired with defendant Herzig, and the jury by its verdict found that Southeastern conspired to commit fraud but did not find that the president of Southeastern conspired to commit fraud.

**Am Jur 2d, Conspiracy §§ 54, 55, 64, 66; Trial §§ 913, 914.**

7. **Unfair Competition § 1 (NCI3d); Costs § 36 (NCI4th) — fraudulent title certification — attorney fees — justiciable issue**

Attorney fees were not recoverable in an action arising from a fraudulent title insurance certification where N.C.G.S. § 75-16.1 did not apply to Investors Title and, since both parties were able to sustain and prevail on several different issues through the various stages of this case, one cannot reasonably say that there was a complete lack of a justiciable issue as to either party.

INVESTORS TITLE INSURANCE CO. v. HERZIG

[330 N.C. 681 (1992)]

**Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices § 735; Costs § 72.**

8. **Rules of Civil Procedure § 59 (NCI3d) — fraudulent certification of title — motion for a new trial denied — no abuse of discretion**

There was no abuse of discretion in the denial of a motion for a new trial under N.C.G.S. § 1A-1, Rule 59, where defendant Southeastern failed to cite any error in law occurring at trial to which it objected and failed to demonstrate how the abundance of evidence presented can be deemed insufficient to justify the verdict reached.

**Am Jur 2d, New Trial §§ 39, 83.**

9. **Appeal and Error § 147 (NCI4th) — argument first raised in Supreme Court — not heard**

A defendant in an action arising from a fraudulent certification of title cannot raise an argument concerning restrictive covenants in the Supreme Court when it was not presented to the trial court or the Court of Appeals.

**Am Jur 2d, Appeal and Error §§ 545, 547.**

ON discretionary review pursuant to N.C.G.S. § 7A-31 of the decision of the Court of Appeals, 101 N.C. App. 127, 398 S.E.2d 659 (1990), affirming the judgment entered by *Hudson, J.,* in the Superior Court, DURHAM County, on 6 September 1989 and 2 October 1989. Heard in the Supreme Court on 12 November 1991.

*Maxwell & Hutson, P.A., by James H. Hughes and Robyn R. Compton Whitman, for plaintiff-appellee.*

*McCall & James, by Randolph M. James and M. Lee Decker, for defendant-appellant Southeastern Shelter Corporation.*

*Womble Carlyle Sandridge & Rice, by G. Eugene Boyce and Elizabeth L. Riley, for defendant-appellant Everett, Creech, Hancock & Herzig.*

MARTIN, Justice.

In this appeal this Court is faced for the first time with the issue of whether a cause of action for unfair practices is assignable. For the reasons later related, we hold that such cause is not

assignable. We also discuss additional issues presented by defendant Southeastern Shelter Corporation and find them to be without merit.

This is an action arising out of an attorney's fraudulent certification of a title insurance application. On 29 February 1984, plaintiff filed a lawsuit against defendant Southeastern Shelter Corporation ("Southeastern"), David F. Herzig ("Herzig"), Jerry S. Chesson ("Chesson"), and Lee L. Corum ("Corum") seeking damages for fraud, conspiracy to commit fraud, unfair or deceptive practices under N.C.G.S. § 75-1.1, negligence and breach of warranty. On 20 June 1984, plaintiff amended its complaint to add Herzig's law partnership, Everett, Creech, Hancock & Herzig ("Partnership"), as a defendant in this action.

On 13 September 1985, plaintiff and defendant Partnership filed cross-motions for summary judgment on the issue of defendant Partnership's vicarious liability. Summary judgment was entered for defendant Partnership denying plaintiff's cross-motion. The Court of Appeals affirmed, but this Court granted discretionary review, reversed the Court of Appeals and remanded the case to the trial court. *Investors Title Ins. Co. v. Herzig*, 320 N.C. 770, 360 S.E.2d 786 (1987). The trial judge granted defendant Southeastern's motion for directed verdict on its cross-claims against defendant Herzig. On 27 July 1989, the jury returned verdicts for plaintiff against Herzig on the issues of fraud (specific acts later found to constitute an unfair practice), compensatory damages in the amount of $34,364.38 and punitives damages in the amount of $100,000 and against defendant Southeastern on the issue of conspiracy to commit fraud and compensatory damages in the amount of $42,000. On 6 September 1989, the trial court entered judgment against Herzig and Partnership, jointly and severally, on the issues of breach of warranties and representation of title certificate in the amount of $34,364.38. On 6 September 1989, the trial court held that the acts of Southeastern and Herzig constituted unfair or deceptive practices; it trebled all damages and awarded attorney's fees against Herzig and Southeastern pursuant to N.C.G.S. § 75-1.1. On 2 October 1989, the trial court denied Partnership's motion for judgment notwithstanding the verdict and Southeastern's motion for a new trial.

On appeal by defendants Partnership and Southeastern, the Court of Appeals affirmed on 18 December 1990. Partnership and Southeastern filed petitions for discretionary review with this Court.

We allowed their petitions on 12 June 1991. We now reverse the Court of Appeals and remand for entry of judgment against Southeastern in the amount of $34,364.38. We also hold that Partnership's petition for discretionary review was improvidently allowed.

In September 1975, the Redevelopment Commission of the City of Henderson recorded restrictions on a tract of land consisting of four parcels in Vance County. Southeastern was selected as the developer of this land as part of the city's urban renewal program.

Southeastern and J. Leo Hawkins entered into a limited partnership called Henderson Heights, Ltd. Hawkins agreed to pay Southeastern $100,000 for all of the rights to Southeastern's contract with the Redevelopment Commission. On 11 November 1980, the Commission deeded the tract of land to Henderson Heights. The deed was subject to some prior recorded restrictive covenants which prohibited any encumbrances on the land and any transfers of the property without the consent of the Commission. Hawkins failed to pay Southeastern the $100,000, and Southeastern did not close on the sale of the land.

Henderson Heights deeded two parcels of the land to Southeastern as security for $45,000. Southeastern agreed to reconvey the parcels back to Hawkins when he paid Southeastern the $45,000. The Commission did not approve the conveyance to Southeastern or the contract for sale between Hawkins and Southeastern; both transactions violated the restrictive covenants of record. Hawkins never paid Southeastern the $45,000; consequently, Southeastern was in serious need of cash.

Herzig, an attorney for Southeastern, informed Southeastern that if he and his law firm, Partnership, held the deed for the two parcels in escrow, it would be possible to obtain a loan of $30,000 using the parcels as security. Southeastern conveyed its contract for the sale of the parcels to Herzig and later recorded a deed conveying the two parcels to Herzig.

Herzig subsequently obtained a $30,000 loan from Planter's Bank ("Bank") in violation of Southeastern's instructions to Herzig not to encumber the land. The loan was evidenced by a promissory note and secured by a deed of trust. Herzig himself certified title to Investors and stated that the restrictive covenants were not violated. Lee Corum, an attorney, presented Bank with a preliminary

## INVESTORS TITLE INSURANCE CO. v. HERZIG

### [330 N.C. 681 (1992)]

certificate of title listing three exceptions. After further investigation over Herzig's objections, Corum discovered that the deed from Southeastern to Herzig was not recorded; Corum added this fact as a fourth exception to the certificate of title. The final certificate signed by Herzig, below the typed name of his then law partnership, stated that there were no violations of the restrictive covenants.

The $30,000 loan obtained from Bank was divided between Southeastern and Herzig: $20,000 to Southeastern and $10,000 to Herzig. Investors issued a title insurance policy to the Bank in reliance on Herzig's certification of title.

In March 1981, Herzig presented a Trust Agreement to Southeastern granting full discretionary authority to Herzig over the two parcels deeded to him. Southeastern refused to sign the agreement. In December 1981, Southeastern learned for the first time that Herzig had encumbered the two parcels he held in escrow.

Herzig defaulted on the $30,000 loan. On 7 June 1982, Herzig recorded a quitclaim deed to Southeastern trying to persuade Southeastern to assume all the encumbrances on the land. Southeastern refused to accept the deed.

The Bank filed a claim on the title insurance policy issued by Investors because of the improper acknowledgment on the deed from Southeastern to Herzig. Investors stated that it would pay the claim only after the Bank pursued all its available legal remedies. The Bank subsequently instituted a foreclosure proceeding that was denied due to the restrictive covenants that were placed on the land in 1975. The Bank's appeal is still pending. In preparing for the foreclosure proceeding, Herzig was deposed in August 1983, before his incarceration for failure to disclose liabilities on a financial statement to a bank. Plaintiff paid the Bank $30,000 plus interest in the amount of $4,364.38. The Bank assigned all its rights arising out of the claim to plaintiff.

### I.

[1] This Court having concluded that discretionary review was improvidently allowed as to defendant Partnership, the only defendant remaining on this appeal is Southeastern.

Plaintiff alleges in its complaint that Bank has assigned to plaintiff "all rights and causes of action which it has against all defendants." Whether an unfair or deceptive practice claim pur-

suant to N.C.G.S. § 75-1.1 is assignable is a question of first impression in North Carolina. No North Carolina statute allows the assignment of fraud or unfair practice claims. Plaintiff, citing *Allstate Ins. Co. v. Kelly*, 680 S.W.2d 595 (Tex. Ct. App. 1984), argues that the Court should allow assignment of the unfair practice claim because assignability is the general rule under modern law and nonassignability is the exception.

While, in general, causes of action may be assigned, 2 N.C. Index 4th *Assignments* § 2 (1990), we hold that unfair practice claims pursuant to N.C.G.S. § 75-1.1 cannot be assigned. *See generally North Carolina Baptist Hospitals, Inc. v. Mitchell*, 88 N.C. App. 263, 362 S.E.2d 841 (1987); *Southern Ry. Co. v. O'Boyle Tank Lines, Inc.*, 70 N.C. App. 1, 318 S.E.2d 872 (1984). Claims such as defamation, abuse of process, malicious prosecution or conspiracy to injure another's business are not assignable as such claims are considered personal torts. *See generally Southern Ry. Co. v. O'Boyle Tank Lines, Inc.*, 70 N.C. App. 1, 318 S.E.2d 872 (1984); 6 Am. Jur. 2d *Assignments* § 37 (Supp. 1991); R.D. Hursh, Annotation, *Assignability of Claims for Personal Injury or Death* 40 A.L.R.2d 500, § 3 (Supp. 1991).

The causes of action of conspiracy to commit fraud and unfair practice are also personal in nature. Therefore, the assignment of such claims violates our public policy and will not be enforced. *See generally North Carolina Baptist Hospitals, Inc. v. Mitchell*, 88 N.C. App. 263, 362 S.E.2d 841 (1987), *aff'd*, 323 N.C. 528, 374 S.E.2d 844 (1988); *Southern Ry. Co. v. O'Boyle Tank Lines, Inc.*, 70 N.C. App. 1, 318 S.E.2d 872 (1984).

The legislative intent in enacting Chapter 75 of the North Carolina General Statutes was to establish an effective cause of action for aggrieved consumers and to provide a method to maintain ethical standards of dealings between persons engaged in business and promote good faith thereby achieving the ultimate goal of protecting the consuming public. *Marshall v. Miller*, 302 N.C. 539, 276 S.E.2d 397 (1981); *Hardy v. Toler*, 288 N.C. 303, 218 S.E.2d 342 (1975); *Bunting v. Perdue, Inc.*, 611 F. Supp. 682 (E.D.N.C. 1985). In the present case, assignability of this claim would be offensive to both legislative objectives. This Court, in *Marshall*, 302 N.C. at 543, 276 S.E.2d at 400, emphasized the consumer protection nature of Chapter 75 and the notion that the treble damages

provision of N.C.G.S. § 75-16 was intended to create an effective private remedy for aggrieved consumers.

The plaintiff in this case is not an aggrieved "consumer" because it is not a "consumer" with respect to defendants. Indeed, Investors is the "seller" of the title insurance which was purchased by Herzig to protect the Bank. The question before us focuses on what effect assignability of the claim would have upon the legislative intent and spirit of the Act. The punitive nature of the Act allows treble damages to be recovered by the victim. If a claim under the Act is deemed assignable, the consumer would not be provided the protection afforded by this statutory provision. Rather, the recovery of trebled damages would result in a third party receiving a windfall from another person's injury.

If a claim for violation of the Act is assignable, insurance companies and other powerful parties could buy these potentially profitable causes of action and ultimately profit from another's injuries, further negating the statutory intent of protecting the consumer. The assignment of an unfair practice claim would wreak havoc by creating a market for claims of a personal nature.

Finally, nonassignability of these claims achieves the Act's ultimate goal. Common law subrogation is available to an insurer to recover any monies paid, while the aggrieved party can maintain an action for fraud or unfair practices. In this way, the injured party, not the insurer, will receive trebled damages as contemplated by the Act. Nonassignability ensures that all the parties are properly protected and the purposes of the law are upheld.

[2] Investors paid the Bank $34,364.38. It can therefore sue Southeastern to recover that amount on the basis of common law subrogation. See Insurance Co. v. Insurance Co., 277 N.C. 216, 176 S.E.2d 751 (1970); Dowdy v. R.R. and Burns v. R.R., 237 N.C. 519, 75 S.E.2d 639 (1953); NCNB Nat. Bank v. Western Surety Co., 88 N.C. App. 705, 364 S.E.2d 675 (1988); Trustees of Garden of Prayer Baptist Church v. Geraldco Builders, Inc., 78 N.C. App. 108, 336 S.E.2d 694 (1985); 12 N.C. Index 3rd Subrogation § 1 (1990). Subrogation is an equitable assignment in which an insurance company can seek reimbursement to the extent of its payment to the insured. See Insurance Co., 277 N.C. at 221, 176 S.E.2d at 756; J&B Slurry Seal Co. v. Mid-South Aviation, Inc., 88 N.C. App. 1, 11, 362 S.E.2d 812, 818 (1987). Thus, plaintiff became subrogated to Bank's claims against defendants to the extent of

its payment to Bank. Therefore, pursuant to the findings of the jury, we hold that Investors is entitled to a judgment against defendant Southeastern for $34,364.38 which is the amount plaintiff paid to the Bank on its subrogated claim.

II.

[3]   Prior to the institution of this action, Herzig's deposition was taken in the foreclosure proceeding separate from this action. In the foreclosure proceeding, the Bank was trying to foreclose on the Henderson Heights property which had been used to secure the loan for development. Herzig's deposition was used in that proceeding to determine if the conveyance to the Bank was defective. The foreclosure proceeding was limited to consideration of the four statutory issues. Southeastern's counsel was present at the deposition, but only addressed these four issues. At that time, plaintiff had not yet filed its suit naming Southeastern.

In this trial, the entire deposition from the foreclosure proceeding was read to the jury. No cross-examination of Herzig during trial was possible because Herzig was unavailable for trial as defined by Rule 804 of the North Carolina Rules of Evidence. The deposition was admitted at trial over Southeastern's objection, and it contends this was error.

North Carolina law limits the use of depositions in civil cases. See Tennessee-Carolina Transportation, Inc. v. Strick Corp., 291 N.C. 618, 231 S.E.2d 597 (1977); Warren v. Asheville, 74 N.C. App. 402, 328 S.E.2d 859, disc. rev. denied, 314 N.C. 336, 333 S.E.2d 496 (1985). Oral testimony is more desirable, but a deposition may be used if the witness is unavailable. Rule 32(a) of the North Carolina Rules of Civil Procedure states:

> [A]ny part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, . . . :
>
>      . . . .
>
>      (4) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: . . . that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or upon application and notice, that such exceptional circumstances exist

as to make it desirable, in the interest of justice and with due regard to the importance of presenting testimony of witnesses orally in open court, to allow the deposition to be used . . . .

N.C. R. Civ. P. 32(a).

Rule 804 of the North Carolina Rules of Evidence defines "unavailable" in part, as situations where the declarant:

(5) Is absent from the hearing and the proponent of his statement has been unable to procure his attendance . . . by process or other reasonable means.

N.C. R. Evid. 804(a)(5). Rule 804 also exempts certain evidence and testimony from the Hearsay Rule and, thereby allows its admittance, if the declarant is unavailable as a witness.

(1) *Former Testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

N.C. R. Evid. 804(b)(1).

The unavailability test in the former testimony exception to the Hearsay Rule was met. Plaintiff went to extraordinary lengths to locate Herzig. The plaintiff subpoenaed Herzig for deposition; however, Herzig ignored the subpoena. In an effort to subpoena Herzig to appear at trial, plaintiff attempted to locate Herzig through various means. Plaintiff's counsel discovered Herzig's phone number was unlisted so he could not be reached by telephone. Plaintiff conducted a credit check to determine Herzig's physical location, but the Orange County Sheriff was still unable to serve a subpoena on Herzig at his address. The trial court determined upon making these findings that Herzig was unavailable for trial. Although Southeastern asserts that plaintiff's action to locate Herzig should have been instituted earlier, it cites no authority for such a proposition. Southeastern argues that plaintiff's counsel began the search for Herzig only three to four weeks before trial began in an action that had been going on for over five years, clearly showing that plaintiff was dilatory in tracking down Herzig. However, a con-

tinuous search for a witness is unnecessary. *Econo-Travel Motor Hotel Corp. v. Foreman's, Inc.*, 44 N.C. App. 126, 260 S.E.2d 661 (1979), *disc. rev. denied*, 299 N.C. 544, 265 S.E.2d 404 (1980). The fact that Herzig was served with a subpoena, but chose to ignore it is indicative that earlier action would have been just as futile.

In North Carolina, "testimony must have been given at . . . the trial of another cause involving the issue and subject matter to which the testimony is directed at the current trial." 1 Henry Brandis, Jr., *Brandis on North Carolina Evidence* § 145, at 575-76 (1982). The party against whom the deposition is offered must have both (1) the opportunity to develop testimony and (2) a similar motive to cross-examine the deponent.

Southeastern asserts that it was not a party to the foreclosure proceeding in which Herzig gave his deposition. Therefore, it did not have the proper motive while cross-examining Herzig for Herzig's deposition to be admitted into evidence. However, Southeastern had an interest in the foreclosure proceeding because the property being foreclosed upon was the property it had agreed to place in escrow with Herzig in exchange for funds to begin the development of that property. As evidenced by the first two pages of the deposition, Southeastern's counsel appeared at the deposition. The trustee who initiated the foreclosure testified that notice of foreclosure was sent to Southeastern. During cross-examination of Herzig by Southeastern's counsel, a number of exhibits were identified with the designation "SE" standing for Southeastern.

Southeastern not only was present at the deposition, but also had opportunity and motive to develop testimony by cross-examination and it actively did so. Counsel's cross-examination went for twenty pages and covered the entire transaction between Herzig and Southeastern as it relates to the property in question and the loan from the Bank. Southeastern's opening argument in the present case tracks Herzig's deposition. The president of Southeastern stated that the subject matter of his deposition in the foreclosure proceeding was identical to the subject matter of his deposition in the present case. Southeastern cross-examined Herzig at his deposition on the same issues in the foreclosure proceeding as were present in the case *sub judice*. Herzig was questioned only on the property and statutory issues in the foreclosure proceeding. The trial court properly admitted Herzig's deposition as evidence.

INVESTORS TITLE INSURANCE CO. v. HERZIG

[330 N.C. 681 (1992)]

### III.

[4] Plaintiff introduced a duplicate of a document entitled "Trust Agreement" between Herzig and Southeastern as evidence to show a conspiracy between Herzig and Southeastern. Southeastern now contests the authenticity of the duplicate. It argues that the admitted document is textually inconsistent with the original. The original has more pages than the duplicate. Southeastern refused to sign the original; therefore, the duplicate with its signature is neither indicative of an agreement or conspiracy nor authentic.

Every writing sought to be admitted must be properly authenticated. *See generally State v. Artis*, 325 N.C. 278, 384 S.E.2d 470 (1989), *vacated and remanded on other grounds*, --- U.S. ---, 108 L. Ed. 2d 604 (1990); *Gastonia v. Parrish*, 271 N.C. 527, 157 S.E.2d 154 (1967); *FCX, Inc. v. Caudill*, 85 N.C. App. 272, 354 S.E.2d 767 (1987). Southeastern argues that the Trust Agreement was not authenticated according to Rule 901 of the North Carolina Rules of Evidence. Rule 901(a) states: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Plaintiff satisfied the requirements of authenticity by providing evidence sufficient to support a finding by the jury that the Trust Agreement shows the basis of an agreement between two defendants. All the facts contained in the duplicate of the Trust Agreement were proven by Investors through other sources. Southeastern's president, Chesson, testified that the duplicate had fewer pages than the original and the documents were textually inconsistent. Chesson's testimony was inconsistent as to the signing of various contracts, and the credibility of his testimony was for the jury. We find that the document was properly authenticated.

[5] The Best Evidence Rule, Rule 1002 of the North Carolina Rules of Evidence states: "To prove the content of a writing, recording, or photograph, the original writing, recording or photograph is required, except as otherwise provided in these rules or by statute." The Best Evidence Rule merely requires the exclusion of secondary evidence offered to prove the contents of a document whenever the original document itself is available. *See generally* N.C. Gen. Stat. § 8C-1, Rules 1002-04 (1988); *State v. Eason*, 328 N.C. 409, 402 S.E.2d 809 (1991); *Overby v. Overby*, 272 N.C. 636, 158 S.E.2d 799 (1968); *U.S. Leasing v. Everett, Creech, Hancock*

*and Herzig*, 88 N.C. App. 418, 363 S.E.2d 665, *disc. rev. denied*, 322 N.C. 329, 369 S.E.2d 364 (1988); 2 Henry Brandis, Jr., *Brandis on North Carolina Evidence* § 192 (3d ed. 1988). Here, the original document is unavailable. The trial court admitted the duplicate because it found the original was lost, destroyed, or in the exclusive possession of Herzig. Plaintiff does not have the original because it was not a party to the agreement. The president of Southeastern said that he never signed the Trust Agreement and, therefore, does not have an original agreement.

Defendant Southeastern argues that no evidence exists to support the court's findings that plaintiff searched for the original. Defendant contends it was severely prejudiced by the admission of the copy because this document was central to plaintiff's proof of conspiracy. However, plaintiff did take extensive, albeit unsuccessful, measures to secure the presence of Herzig who was believed to be in sole possession of the original of the Trust Agreement. As contemplated in Rule 1004(2), the court found that the original could not be obtained by any available judicial process or procedure, thereby placing the duplicate within an exception to the Best Evidence Rule and allowing its admission into evidence. The jury made the final decision of whether the duplicate was convincing evidence that a conspiracy existed between the defendants. Therefore, we hold that the duplicate was properly admitted.

## IV.

[6] Southeastern's argument that the trial court erred in giving a peremptory instruction in the jury charge regarding the charge of conspiracy is meritless. The trial court found that Herzig committed an act constituting an unfair or deceptive practice. Southeastern argues that by this finding the trial court impermissibly suggested to the jury that a conspiracy had been formed between Herzig and one of the other two defendants. The only question before the jury, according to Southeastern's reasoning, was with whom Herzig conspired thereby impermissibly influencing the jury to find that a conspiracy existed between Herzig and Southeastern.

We reject this argument. The jury still had to decide whether Southeastern conspired with Herzig. The jury by its verdict found that Southeastern conspired to commit fraud, but did not find that the president of Southeastern conspired to commit fraud. The peremptory instructions did not improperly influence the jury's

verdict on the conspiracy issue. We thereby hold that this contention is without merit.

## V.

[7] Southeastern also argues that the court did not make the necessary findings to allow attorney's fees as required by N.C.G.S. § 75-16.1. Attorney's fees are not recoverable by Investors under N.C.G.S. § 75-16.1 because, as we have previously decided, the statute does not apply to Investors. Therefore, attorney's fees may not be awarded under the Act.

Attorney's fees are also not allowable in this case under N.C.G.S. § 6-21.5. *See Sunamerica Financial Corp. v. Bonham*, 328 N.C. 254, 400 S.E.2d 435 (1991); *Short v. Bryant*, 97 N.C. App. 327, 388 S.E.2d 205 (1990). North Carolina General Statute § 6-21.5 states:

> In any civil action or special proceeding the court, upon motion of the prevailing party, may award a reasonable attorney's fee to the prevailing party if the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading.

Since both parties were able to sustain and prevail on several different issues through the various stages of this case, one cannot reasonably say that there was a complete lack of a justiciable issue as to either party.

## VI.

Southeastern further argues that the court committed error by submitting issues of conspiracy to commit unfair practices to the jury after ruling in Southeastern's favor that it was entitled to indemnification from Herzig. Southeastern contends the result was inconsistent verdicts. However, these arguments are moot due to this Court's decision concerning the assignability of unfair practice claims.

## VII.

[8] Southeastern argues that the trial court abused its discretion by denying defendant's motion for a new trial under Rule 59 of the North Carolina Rules of Civil Procedure. Under this Rule, a party may obtain a new trial either for errors of law committed during the trial or for a verdict not sufficiently supported by the evidence. *See generally Bryant v. Nationwide Mut. Fire Ins. Co.*,

313 N.C. 362, 329 S.E.2d 333 (1985); *Worthington v. Bynum*, 305 N.C. 478, 290 S.E.2d 599 (1982). The grounds for a new trial relied upon by Southeastern are outlined in Rule 59 of the North Carolina Rules of Civil Procedure: "(7) Insufficiency of the evidence to justify the verdict or that the verdict is contrary to law; (8) Error in law occurring at the trial and objected to by the party making the motion, or (9) Any other reason heretofore recognized as grounds for new trial."

Our courts have held repeatedly since 1820 that the ruling of a judge on a motion for a new trial is in the sound discretion of the trial judge. In the absence of abuse of discretion, such ruling is not reversible on appeal. *See generally Turner v. Duke University*, 325 N.C. 152, 381 S.E.2d 706 (1989); *Smith v. Price*, 315 N.C. 523, 340 S.E.2d 408 (1986); *Armstrong v. Wright*, 8 N.C. 93 (1820). Southeastern fails to cite any error in law occurring at trial to which it objected. It fails to demonstrate how the abundance of evidence presented can be deemed insufficient to justify the verdict reached. It fails to show any abuse of discretion by the trial judge. We overrule this argument.

## VIII.

**[9]** Southeastern argues that the restrictive covenants placed on the land when it was transferred by the City of Henderson to Henderson Heights, Ltd. are void as a restriction on alienation. This argument cannot be raised for the first time in this Court as it was not presented to the trial court or the Court of Appeals. *White v. Pate*, 308 N.C. 759, 304 S.E.2d 199 (1983).

In summary, we hold that a claim for unfair practices under N.C.G.S. § 75-1.1 cannot be assigned. However, Investors is subrogated to the Bank's claim to the amount it paid to the Bank as determined by the jury's verdict and is entitled to a judgment in that amount. We hold that discretionary review as to petitioner Everett, Creech, Hancock & Herzig was improvidently allowed.

The decision of the Court of Appeals is reversed and this cause is remanded to that court for further remand to the Superior Court, Durham County, for the entry of judgment against defendant Southeastern in the amount of $34,364.38 and the costs of this action.

Reversed and remanded as to defendant Southeastern.

Discretionary review improvidently allowed as to defendant Partnership.

Justice WHICHARD did not participate in the consideration or decision of this case.