ZACHARY, Judge.
*847 *359 Plaintiff Joris Haarhuis, as administrator of the estate of Julie Haarhuis, appeals from the trial court's order denying his Motion for Appointment of Receiver over defendant's unliquidated legal claims against third-parties. We reverse.
Background
Defendant Emily Cheek was driving while impaired in July 2013 when she hit and killed pedestrian Julie Haarhuis. Ms. Haarhuis's husband, Joris Haarhuis, qualified as administrator of his wife's estate.
At the time of the crash, Universal Insurance Company insured defendant's vehicle. Universal determined that the value of plaintiff's claim exceeded the limits of defendant's $50,000 policy. On 2 September 2014, pursuant to Universal's offer, plaintiff agreed to release its claims against defendant in exchange for payment of the $50,000 policy limit, on the condition that payment be made within ten days. Universal received plaintiff's acceptance that same day. Two days later, Universal retained an attorney from Burton, Sue & Anderson, LLP ("Burton") to represent defendant to the extent of the policy limits. Universal forwarded plaintiff's settlement demand to the attorney. However, by the time plaintiff's settlement offer expired on 12 September 2014, plaintiff had not received *360 a response from Universal or Burton. Plaintiff filed suit the next week, on 19 September 2014.
As the litigation proceeded, plaintiff again offered to settle, this time in exchange for a $2 million consent judgment, but plaintiff required Universal's approval. One week later, the attorney representing defendant on her exposure in excess of the policy limits wrote to Universal on defendant's behalf and demanded that it agree to settle the claims against her. This settlement would have permitted defendant to seek relief in bankruptcy. However, roughly one month later, plaintiff was informed that Universal would not approve the $2 million consent judgment. Plaintiff posits that Universal preferred that defendant not seek relief in bankruptcy, for fear that the bankruptcy trustee would pursue litigation on defendant's behalf against Universal for its failure to settle the case initially for $50,000. The case then went to trial, and on 28 April 2017 the jury entered a verdict against defendant for $4.25 million in compensatory damages and $45,000 in punitive damages. However, the Chatham County Sheriff's Office returned the writ of execution unsatisfied, as the deputy "did not locate property on which to levy" and "[d]efendant refused to pay."
One year later, with the judgment still unsatisfied, plaintiff filed a Motion for Appointment of Receiver pursuant to N.C. Gen. Stat. § 1-363. Plaintiff maintained that defendant possessed property in the form of unliquidated legal claims against Universal and Burton for their actions in causing defendant to be encumbered with a judgment of nearly $4.3 million. Specifically, plaintiff is of the position that defendant has legal claims against Universal, "including claims for breach of contract, breach of the duty of good faith and fair dealing, unfair trade practice, and tortious bad faith[,]" and against Burton for "breach of fiduciary duty and failure to meet the standard of care[.]"
According to plaintiff,
[t]he potential choses in action described above must be sued upon promptly or the applicable statute of limitations may bar an *848 action. Defendant is wasting valuable time by her failure to take prompt legal action to recover money for the choses in action. Defendant, by her delay in pursuing the choses in action, is in the process of causing irreparable harm to Plaintiff, as Defendant has no other apparent means of satisfying the judgment against her.
Plaintiff therefore sought to have a receiver appointed of defendant's choses in action against Universal and Burton.
*361 The trial court heard plaintiff's Motion for Appointment of Receiver on 5 June 2017. Plaintiff's and defendant's counsel appeared at the hearing; however, counsel for Universal and Burton appeared as well. Plaintiff objected to the appearances of Universal and Burton for lack of standing as potential debtors of defendant, but the trial court nevertheless permitted Universal and Burton to argue against the appointment of a receiver. Following the hearing, the trial court entered an order containing the following findings and conclusions:
19. Defendant does not wish to have a receiver appointed for any purpose.
...
1. N.C. Gen. Stat. § 1-502 specifies when a receiver may be appointed. The circumstances of this case do not apply as the appointment of a receiver in this case would not "carry the judgment into effect," it would not "dispose of the property according to the judgment," it would not "preserve [the property] during the pendency of an appeal" and this is not a case in which the "judgment debtor refuses to apply his property in satisfaction of the judgment." See N.C. Gen. Stat. § 1-502(2) & (3).
2. The appointment of a receiver is within the discretion of the Court. See Barnes v. Kochhar , 178 N.C. App. 489, 500, 633 S.E.2d 474, 481 (2006).
3. The appointment of a receiver is an equitable remedy. See Jones v. Jones , 187 N.C. 589, 592, 122 S.E. 370, 371 (1924) ("[t]he appointment of a receiver is equitable in its nature and based on the idea that there is no adequate remedy at law, and is intended to prevent injury to the thing in controversy").
4. The court finds that the defendant has asserted that she has no property that, to a reasonable degree, could be subject to execution.
The trial court thereafter denied plaintiff's Motion for Appointment of Receiver. Plaintiff timely appealed.
Discussion
On appeal, plaintiff presents the following questions to this Court: (1) "Where a judgment creditor shows the court that a judgment debtor *362 has unliquidated legal claims that she refuses to pursue, may the trial court refuse to appoint a receiver?" and (2) "Did the trial court properly allow non-party debtors of Defendant-Appellee judgment debtor to oppose appointment of a receiver?" We first consider plaintiff's argument concerning standing.
A. Standing
Plaintiff argues that the trial court erred when it heard and considered the arguments of Universal and Burton at the receivership hearing because "debtors of a judgment debtor have no standing to object to the appointment of a receiver in aid of execution[.]" We agree.
It is well settled that the debtor of a judgment-debtor lacks standing to object to the appointment of a receiver, as the debtor is not the "party aggrieved" in the underlying action. Lone Star Industries, Inc. v. Ready Mixed Concrete of Wilmington, Inc. , 68 N.C. App. 308, 309, 314 S.E.2d 302, 303 (1984). In Lone Star Industries, Inc. , the trial court appointed a receiver over certain property of the judgment debtor-corporation at the behest of the judgment-creditor. Id. at 308-09, 314 S.E.2d at 302-03. The judgment-creditor claimed that the judgment-debtor possessed unliquidated legal claims against one of its shareholders and one of its former shareholders. Id. at 309, 314 S.E.2d at 303. Upon appointment of a receiver over that property, the shareholders appealed. Id. With regard to whether the shareholder-appellants had standing to contest the receivership, this Court stated:
That [the shareholder-debtors] are opposed to the defendant debtor receiving *849 the benefit of that property is understandable; but that they were able to assert their opposition in this case for so long under the circumstances is not. The [shareholder-debtors] have no standing in this Court and should have had none in the court below. They are not parties to the case, and, even if they were, their interests are entirely antagonistic to the debtor corporation, whose own interests clearly require that any sums that are owed it by others be promptly applied to its debts.
Id.
The same is true in the instant case. Universal and Burton were not, and are not, parties to the action between plaintiff and defendant, and their interests are "entirely antagonistic" to those of defendant, being that they are her potential debtors. Nor would Universal or Burton be *363 legally aggrieved in the instant case by the appointment of a receiver. Accordingly, because Universal and Burton do not have standing to challenge the appointment of a receiver in the instant case, they were not properly before the trial court, and they are not properly before this Court. We do not consider their arguments, and the trial court erred in doing so.
B. Receivership
Next, plaintiff argues that the trial court erred when it denied plaintiff's Motion for Appointment of Receiver. According to plaintiff, the particular circumstances at issue in the instant case entitled plaintiff to have a receiver appointed in order for the receiver to investigate prosecution of defendant's unliquidated legal claims against Universal and Burton so that those funds can be applied in satisfaction of the underlying judgment. Defendant, however, argues that North Carolina law "does not mandate appointment of a receiver[,]" and that the trial court did not abuse its discretion when it declined to do so in the instant case. (emphasis added). Specifically, defendant maintains that plaintiff's motion was properly denied first, because the causes of action that plaintiff wants placed in receivership are unassignable under North Carolina law, and second, because those claims are merely "potential or speculative." For the reasons explained below, we find plaintiff's arguments persuasive.
I.
Civil judgments for money damages are typically enforced through the process of execution. N.C. Gen. Stat. § 1-302 (2017). Execution is accomplished through the levying of the judgment-debtor's property, i.e. , its physical seizing and subsequent sale. Therefore, property that may be reached by execution typically includes only tangible property or property otherwise represented by instrument. See N.C. Gen. Stat. § 1-315(a) (2017). Instances may arise, however, in which a judgment-debtor has no such tangible property that can be reached by execution; therefore, the outstanding judgment remains unsatisfied. In such a case, Chapter 1, Article 31 of the General Statutes allows for the following supplemental proceeding:
The court or judge having jurisdiction over the appointment of receivers may also by order in like manner, and with like authority, appoint a receiver ... of the property of the judgment debtor, whether subject or not to be sold under execution, except the homestead and personal property exemptions.
*364 N.C. Gen. Stat. § 1-363 (2017).[1] "[A]fter execution against a judgment debtor is returned unsatisfied[,]" receivership is allowed as a last-resort attempt "to aid creditors to reach the property of every kind subject to the payment of debts which cannot be reached by the ordinary process of execution." Massey v. Cates , 2 N.C. App. 162, 164, 162 S.E.2d 589, 591 (1968). Such a proceeding is "equitable in nature." Id. "[I]t is elementary that a Court of Equity has the inherent power to *850 appoint a receiver, notwithstanding specific statutory authorization." Lowder v. All Star Mills, Inc. , 301 N.C. 561, 576, 273 S.E.2d 247, 256 (1981) (citing Skinner v. Maxwell , 66 N.C. 45, 48 (1872) ).
Section 1-363 exempts only two classes of property from the scope of receivership: "the homestead and personal property exemptions" provided in N.C. Gen. Stat. § 1C-1601(a). Otherwise, Section 1-363 contemplates that a receiver may be appointed in order to facilitate prosecution of an unliquidated legal claim that a judgment-debtor might have against a third party. See e.g. , N.C. Gen. Stat. § 1-366 (2017) ; N.C. Gen. Stat. § 1-360 (2017) ; Carson v. Oates , 64 N.C. 115 (1870). For instance, N.C. Gen. Stat. § 1-366, "Receiver to sue debtors of judgment debtor," explicitly addresses the situation in which a judgment-debtor's property takes the form of a contested debt. That section provides:
If it appears that a person ... alleged to have property of the judgment debtor, or indebted to him, claims an interest in the property adverse to him, or denies the debt, such interest or debt is recoverable only in an action against such person ... by the receiver[.]
N.C. Gen. Stat. § 1-366 (2017). Additionally, in analyzing the reach of Section 1-363, our Supreme Court has stated that "[i]t is an important part of the duties of the receiver to take possession and get control of the property of the judgment debtor, whether in possession or action, as soon as practicable, and to bring all actions necessary to secure and recover such property as may be in the hands of third parties, however they may hold and claim the same[.]" Coates Bros. , 92 N.C. at 380. In other words, as defendant concedes, both statute and case law "enable[ ] a receiver to sue those who owe the judgment debtor."
*365 The authority of a receiver to pursue a judgment-debtor's legal claims is not limited solely to those claims that are otherwise assignable. It is important to note that receivership is distinct from assignment. "The assignment of a claim gives the assignee control of the claim and promotes champerty[,]" and is therefore void as against public policy. Charlotte-Mecklenburg Hosp. Auth. v. First of Ga. Ins. Co. , 340 N.C. 88, 91, 455 S.E.2d 655, 657 (1995) (citing Southern Railway Co. v. O'Boyle Tank Lines, Inc. , 70 N.C. App. 1, 318 S.E.2d 872 (1984) ). On the other hand, a "receiver" is "[a] disinterested person appointed by a court ... for the protection or collection of property that is the subject of diverse claims[.]" Receiver , BLACK'S LAW DICTIONARY , 1296 (8th ed. 2014). Specifically, a "judgment receiver" "collects or diverts funds from a judgment debtor to the creditor. A judgment receiver is usu[ally] appointed when it is difficult to enforce a judgment in any other manner." Judgment Receiver , BLACK'S LAW DICTIONARY , 1296 (8th ed. 2014). Thus, in the case of receivership, the judgment-creditor exercises no control over the judgment-debtor's legal claims. Rather, the receiver does so independently of the judgment-creditor and under the supervision and control of the court. Lambeth v. Lambeth , 249 N.C. 315, 321, 106 S.E.2d 491, 495 (1959) (citations omitted) ("The receiver is an officer of the court and is amenable to its instruction in the performance of his duties; and the custody of the receiver is the custody of the law."). The purpose of a receiver of legal claims is in essence to act as a trustee, and a claim being placed in receivership is, at most, analogous to an assignment of the proceeds of the claim, which are assignable. Charlotte-Mecklenburg Hosp. Auth. , 340 N.C. at 91, 455 S.E.2d at 657 ("The assignment of the proceeds of a claim does not give the assignee control of the case and there is no reason it should not be valid.").
Moreover, "many exceptions to the principles of champerty ... have been recognized and ... it has come to be generally accepted that an agreement will not be held to be within the condemnation of the principle[ ] unless the interference is clearly officious and for the purpose of stirring up strife and continuing litigation." Wright v. Commercial Union Ins. Co. , 63 N.C. App. 465, 469, 305 S.E.2d 190, 192-93 (1983) (citation and quotation marks omitted). Such concerns are clearly not at issue where a cause of action is in receivership for the purpose of satisfying an outstanding judgment. Nor is it *851 true that the injured judgment-debtor would have no stake in the outcome of her claims against her own debtor by virtue of those claims being placed in receivership. Instead, the judgment-debtor's interests will "clearly require that any sums that are owed it by others be promptly applied to its debts." Lone Star Indus., Inc., 68 N.C. App. at 309, 314 S.E.2d at 303. The judgment-debtor would also have *366 an interest in any recovery that exceeds the amount of debt she owes to the judgment-creditor. Thus, if a receiver elects to pursue a cause of action held by a judgment-debtor and the judgment-debtor prevails thereon, the debtor receives the full benefit of the award. That a portion of that award would in turn be applied to satisfy a pending outstanding judgment simultaneously owed by the judgment-debtor is beyond the purview of the public policy concerns that prohibit claim assignment. See, e.g. , Anthony J. Sebok, The Inauthentic Claim , 64 Vand. L. Rev. 61, 131 (2011) ("The victim's right to assign her right to redress does not destroy the defendant's duty to make repair to her, even if the remedy does not go to her, any more than the fact that a victim may no longer be alive, and may be represented by an estate in a survivorship action alters the defendant's duty in corrective justice to repair the wrongful loss he caused.").
Likewise, defendant also notes that "compensation for personal injury" is exempt from enforcement of certain claims by creditors pursuant to N.C. Gen. Stat. § 1C-1601(a)(8) (2017). As discussed supra , however, the General Assembly included only two Section 1C-1601(a) exemptions into Section 1-363 : "the homestead and personal property exemptions." N.C. Gen. Stat. § 1-363. The Section 1C-1601(a)(8) compensation for personal injury exemption is explicitly excluded from the Section 1-363 supplemental proceeding, and the General Assembly likewise made clear that property may be placed in receivership thereunder "whether subject or not to be sold under execution [.]" Id. (emphasis added). This language is clear and unambiguous, and we are "not at liberty to divine a different meaning through other methods of judicial construction." State v. Hooper , 358 N.C. 122, 126, 591 S.E.2d 514, 516-17 (2004) (citing Burgess v. Your House of Raleigh, Inc. , 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990) ). Our General Assembly has therefore sanctioned-via supplemental receivership proceedings-the application of personal injury proceeds toward the satisfaction of a judgment-creditor's outstanding judgment. Such a prerogative is immune from our tampering. Fagundes v. Ammons Dev. Grp., Inc. , --- N.C. App. ----, ----, 796 S.E.2d 529, 533 (2017).
The limits on the scope of property that may be placed within the control of receivership in the event that execution is returned unsatisfied are found within the receivership statutes themselves. Quite plainly, no law in North Carolina provides that a receiver may only transfer a judgment-debtor's recovery so long as the underlying claim would have been assignable, and so long as the underlying claim is not a personal injury claim. In fact, the law in this State is precisely to the contrary. The *367 supplemental receivership proceeding operates to allow an otherwise helpless judgment-creditor to reach the judgment-debtor's property that cannot "be successfully reached by the ordinary process of execution[.]" Coates Bros. , 92 N.C. at 379.
In determining whether a judgment-creditor is entitled to have a receiver of this form appointed, the trial court need not be convinced that the defendant will prevail on her legal claim. "To warrant the appointment of a receiver, it need not appear, certainly or conclusively, that the defendant has property that he ought to apply to the judgment[.]" Id . at 384. Rather, equity authorizes the appointment of a receiver so long as the party seeking the same "establishes an apparent right to property[.]" Neighbors v. Evans , 210 N.C. 550, 554, 187 S.E. 796, 797 (1936) (emphasis added). "[I]f there is evidence tending in a reasonable degree to show that [the judgment-debtor] probably has such property, this is sufficient[.]" Coates Bros. , 92 N.C. at 384. Once an apparent right to property is shown, it becomes the task of the receiver , rather than the trial court, to determine whether any given "apparent right to property" is indeed worth pursuing:
The judgment debtor cannot complain at the appointment of a receiver. If [she] has *852 property subject to the payment of [her] debt, it ought to be applied to it; if [she] has not such property, this fact ought to appear, with reasonable certainty, to the satisfaction of the creditor. The receiver proceeds to do this, not at the peril of the debtor, but at his own peril, as to costs, if he fails in his action. The purpose of the law in such proceedings is to afford the largest and most thorough means of scrutiny, legal and equitable in their character, in reaching such property as the debtor has, that ought justly go to the discharge of the debt his creditor has against him.
It thus appears that supplementary proceedings are incident to the action, equitable in their nature, and that ... a receiver may be appointed as occasion may require.
Id . at 381.
II.
That appointing a receiver of defendant's unliquidated causes of action against Universal and Burton was a potential remedy available to plaintiff as a judgment-creditor did not, as defendant puts it, mandate that plaintiff had an "absolute right to the appointment of a receiver"
*368 in the instant case. Indeed, a trial court's decision whether to appoint a receiver is ordinarily reviewed under an abuse of discretion standard. Williams v. Liggett , 113 N.C. App. 812, 815, 440 S.E.2d 331, 333 (1994) (citing Murphy v. Murphy , 261 N.C. 95, 101, 134 S.E.2d 148, 153 (1964) ). Nonetheless, courts are vested with the power to appoint a receiver "[b]y statute and under general equitable principles[.]" Murphy , 261 N.C. at 101, 134 S.E.2d at 153 (citation omitted). That equitable nature renders the abuse of discretion standard somewhat nuanced in receivership matters. For example, where a trial court appoints a receiver contrary to its statutory power to do so, it is said that the trial court has abused its discretion. E.g. , Williams , 113 N.C. App. at 815-17, 440 S.E.2d at 333-34. But where a receivership is otherwise permitted by law, whether one ought to be appointed must be adjudged according to the equities of the particular case at hand. E.g. , Coates Bros. , 92 N.C. at 385 ; see also Lowder , 301 N.C. at 576-77, 273 S.E.2d at 256 ; Murphy , 261 N.C. at 101, 134 S.E.2d at 153-154 ; Hurwitz v. Carolina Sand & Gravel Co. , 189 N.C. 1, 6-7, 126 S.E. 171, 173-74 (1925) ; Oldham v. First Nat'l Bank , 84 N.C. 304, 308 (1881). That equitable determination does not "rest[ ] solely in the discretion of the [trial court]," but is instead fully "reviewable by this Court upon appeal." Coates Bros. , 92 N.C. at 386, 387 (citations omitted).
For instance, while the compensation for personal injury exemption and the prohibition against claim assignment do not serve as a direct bar to the types of property over which a receiver may be appointed, that is not to say that the public policies underlying those rules would be wholly immaterial to the determination of whether it is equitable to appoint a receiver over a legal claim in any given case. Indeed, the purpose of receivership " 'is to afford the largest and most thorough means of scrutiny, legal and equitable in their character, in reaching such property as the debtor has, that ought justly to go to the discharge of the debt his creditor has against him.' " Massey , 2 N.C. App. at 166, 162 S.E.2d at 592 (quoting Coates Bros. , 92 N.C. at 381 ) (emphasis added). The hypothetical policy concerns posed by our concurring colleague would-if such cases were to arise-be appropriately considered in the examination of the particular equities at issue. E.g. , Hurwitz , 189 N.C. at 6, 126 S.E. at 173 ("The courts of equity are gradually adjusting themselves to modern conditions and look to what in good conscience is for the best interest of the litigants, without resorting to any hard or fast rule.").
Turning to that analysis in the instant case, we agree with plaintiff that the circumstances are such that equity calls to error the trial court's refusal to appoint a receiver.
*369 As discussed supra , upon plaintiff's Motion for Appointment of Receiver after having completely "exhausted his remedy at law by the ordinary process of execution," Coates Bros. , 92 N.C. at 379, the relevant inquiry for the court became whether it appears that defendant might indeed be entitled to such unliquidated property, and if so, then whether the circumstances at issue are such that equity would warrant that the unliquidated claims and resulting judgments remain *853 solely within defendant's control. Neighbors , 210 N.C. at 554, 187 S.E. at 797 ; see Hurwitz , 189 N.C. at 6-7, 126 S.E. at 173. Unless such equity-barring circumstances are present, it has been the law in this State for some time that plaintiff was entitled to have a receiver appointed "almost as of course[.]" Coates Bros. , 92 N.C. at 380, 379 ("In effectuating this purpose, it very frequently becomes necessary to grant relief by ... the appointment of a receiver[.]").
In the case at bar, it is sufficient that the circumstances are such so as to indicate that plaintiff has potential causes of action against Universal and Burton. We need not express opinion as to the merits of those claims-that is for the receiver to decide. Id. at 381. Nor does the record reveal any equitable grounds on which the decision whether to pursue defendant's apparent claims against Universal and Burton ought to remain within her sole control. It is alleged that Universal and Burton are indebted to defendant as a result of acts in connection with the underlying litigation in the instant case, and that the proceeds of the claims could be used to satisfy plaintiff's injuries if defendant were to pursue them. Nevertheless, defendant refuses to do so, despite the fact that pursuit of the claims could benefit both parties. E.g. Hurwitz , 189 N.C. at 6-7, 126 S.E. at 173-74. If the receiver is able to prosecute defendant's claims to fruition, defendant will "be provided the protection afforded" therefrom; that is, defendant would be relieved of the burden of the judgment against her. Investors Title Ins. Co. v. Herzig , 330 N.C. 681, 689, 413 S.E.2d 268, 272 (1992). Moreover, any judgment obtained against Universal or Burton would be compensation merely for a monetary loss suffered by defendant incident to the underlying action, rather than for an unrelated injury purely "personal" to her so as to render its transfer inequitable despite statutory authorization. Cf. In re Brantley , 2015 WL 230186, *4, 2015 Bankr. LEXIS 129, *9 (citing In re LoCurto , 239 B.R. 314 (Bankr. E.D.N.C. 1999) ) (It is true that "the definition of personal injury [under section 1C-1601(a)(8) ] is not limited to a physical bodily injury under North Carolina law; however, in order to fall under the exemption, the injury leading to the compensation should rise to a level of severe emotional distress" where it does not otherwise involve bodily injury.). Nor would pursuit and transfer to plaintiff of defendant's *370 recovery from Universal and Burton result in plaintiff "receiving a windfall from another person's injury." Herzig , 330 N.C. at 689, 413 S.E.2d at 272. To the contrary, satisfaction of the outstanding judgment in the instant case and the potential recovery to defendant from Universal and/or Burton would be inextricably interwoven, with any transfer of the latter to plaintiff representing precisely that which the jury has determined plaintiff is owed. Indeed, plaintiff requested that the trial court appoint a receiver only over claims that are "related to matters that arose from the wreck which killed Julie Haarhuis[.]" Lastly, the outstanding judgment that defendant owes to plaintiff is significant, and there are no other apparent means by which defendant could satisfy the judgment. See Oldham , 84 N.C. at 308.
The confluence of these distinct factors "comes directly within the equitable principle[s] ... which justif[y] and call[ ] for the appointment of a receiver" for the purpose of determining whether the merits of defendant's claims against Universal and Burton are worth pursuing and, if so, prosecuting the same. People's Nat'l Bank v. Waggoner , 185 N.C. 297, 302, 117 S.E. 6, 9 (1923). We therefore conclude that, in light of the circumstances at issue, it was error for the trial court to deny plaintiff's Motion for Appointment of Receiver. See Coates Bros. , 92 N.C. at 385 ("It is sufficient that we are satisfied that the facts were such as to warrant and require the appointment of a receiver as demanded by the plaintiffs."); Oldham , 84 N.C. at 308 ("And these [circumstances], in our opinion, entitle the defendant who is restrained from pursuing his legal rights, to the interposition of the Court in taking such action as [appointing a receiver]. The Court ought therefore to have granted the defendant's motion"); cf. Hurwitz , 189 N.C. at 7, 126 S.E. at 174.
Conclusion
For the reasons set forth herein, the trial court's order denying plaintiff's Motion for Appointment of Receiver is
REVERSED.
Judge DIETZ concurs by separate opinion.
Judge HUNTER, JR. concurs.

N.C. Gen. Stat. § 1-502 likewise addresses "the powers of the courts to appoint receivers generally[.]" Coates Bros. v. Wilkes , 92 N.C. 376, 383 (1885). Section 1-502(3) provides that a receiver may also be appointed "after judgment" when, inter alia , "an execution has been returned unsatisfied, and the judgment debtor refuses to apply his property in satisfaction of the judgment." N.C. Gen. Stat. § 1-502(3) (2017). The trial court primarily relied on this section in its order denying plaintiff's Motion for Appointment of Receiver.