ALEXANDER OLDHAM v. FIRST NATIONAL BANK OF WILMINGTON.

*Injunction—Receiver of mortgaged premises to secure Rents.*

Where plaintiff mortgagor obtained an injunction to restrain the sale of the mortgaged premises until certain counterclaims could be passed upon and the sum really due ascertained, the defendant mortgagee is entitled to have a receiver appointed to take charge of the property and secure the rents and profits where the same are in danger of being lost. C. C. P., § 215.

(*Fuller* v. *Wadsworth*, 2 Ired., 263; *Ellis* v. *Hussey*, 66 N. C., 501; *Reade* v. *Hamlin*, Phil. Eq., 128, cited and approved.)

MOTION by defendants, (the bank and E. E. Burris, its president), for the appointment of a receiver heard at Fall Term, 1880, of NEW HANOVER Superior Court, before *Gudger, J.*

OLDHAM *v.* BANK.

The motion was denied and the defendants appealed.

*Messrs. McRae & Strange* and *Stedman & Latimer,* for plaintiff.

*Mr. E. S. Martin,* for defendants.

SMITH, C. J. The defendants were about to sell certain lands of the plaintiff conveyed to them by deed of mortgage with power of sale in case of default in paying the secured debts, and the present action is for an injunction until the sum really due upon an adjustment of counter-claims and deductions set up in the complaint can be ascertained and determined. A restraining order has been obtained and continued until the hearing upon terms which have been complied with, and thereupon the defendants ask for the appointment of a receiver to take possession of the property and accruing rents to meet the requirements of the mortgage debts. From the refusal to grant the motion the appeal is taken to this court. Upon the hearing of the application, the affidavits of the parties to the action and of others were read in its support and against it, which we are required to examine and weigh.

The defendant, Burriss, states that the plaintiff is in possession of the mill property as well as his house, appropriating both to his own use, that the debt secured in the mortgage due the bank amounts with interest to $12,392.87, while that due himself is $4,371.46 ; that the plaintiff has failed to pay the taxes for several years and in consequence the property had been sold to pay them, and that $299.32 were required to redeem ; that by reason of the plaintiff's neglect the defendants have been compelled to pay state and county taxes for 1879 and 1880, $301.64, city taxes for the years 1875, 1876, 1877, 1878 and 1879, $949.06, and the city taxes for the year 1880 due and unpaid are $224, which defendants expect themselves to meet; that for the plaintiff's

further default, the defendants have had to pay the premiums for insurance amounting to $275.52; that the property is assessed for taxation at $12,800, and plaintiff has no other visible property in the county except personal property assessed at $795; that the most valuable part is a large steam flour and grist mill, with the attached machinery, exposed to damage from fire, not of ready sale and but a precarious security for the debts; that in his opinion the lands will not, if sold, bring a sufficient sum to satisfy the mortgage and the plaintiff is himself utterly insolvent.

Several other affidavits were also introduced in reference to the value of the mortgaged property from M. Cronly, a real estate broker and auctioneer for twenty-five years, and John K. Brown, a civil engineer and also a real estate broker of thirteen year's experience; from Oscar G. Parsley, several times acting as assessor of city property for taxation, and Preston Cumming whose occupation is the running of a steam grist mill; from A. H. Van Bokkelen and A. J. De Rosset, long residents of the city. These all declare their familiar knowledge of the value of real estate in Wilmington, and of the mortgaged lands particularly. And their estimates of the value of the lands, sold for cash, range from $12,500 to $17,500, with an additional sum of about $3,000, if sold on a credit of one, two, three and four years.

The plaintiff in his affidavit controverts the defendant's statements as to the amount of the encumbering debt, alleges his redeeming the land and his arrangements for discharging the taxes due the city for 1875, 1876 and 1877, and was in the act of giving them effect when he learned of the unauthorized payment by defendant, Burriss, without previous notice to him. In relation to the value of the property the plaintiff offered the joint affidavit of Samuel Butt, E. T. Love, J. G. Bagley, John McEachern, R. B. Wood, J. H. Hamby and J. H. Huff, in which they state that they had that day examined the property, found it in

good condition, and "think its true value on the market to be from $33,000 to $36,000.

The record shows that an injunction bond of $4,000 had been required and that three bonds in that aggregate penal sum, with justified sureties, had been given before the issue of the injunction for the indemnity of the defendants against damages resulting therefrom.

The conveyance of land or personal property by mortgage or deed in trust is an appropriation of it as a security for the mortgage debt, and while the mortgagor permitted to remain in possession may take and use the rents and profits, the mortgagee at least after default may enter into or recover possession by action in order that these may be applied in reduction of his demand, and this he may do without notice. *Fuller* v. *Wadsworth*, 2 Ired., 263; *Ellis* v. *Hussey*, 66 N. C., 501. This clear legal remedy debars him from recourse to a court of equity for its aid unless incidental to a jurisdiction already assumed in obtaining the profits, since it will not interfere when the remedy at law is full and adequate. But if the mortgage is due and the proceeds of the property are not likely to prove sufficient to discharge the incumbrance, and the debtor is insolvent, the mortgagee may have a receiver appointed to secure the uncollected rents to meet the apprehended deficiency. High on Receivers, §§ 640 and 643, and cases referred to. *Reade* v. *Hamlin*, Phil. Eq., 128. The matter is, however, regulated by statute in this state and a receiver may be appointed "before judgment on the application of either party when he establishes an apparent right to property which is the subject of the action, and which is in the possession of an adverse party, and the property or its *rents and profits* are in danger of being lost or materially injured or impaired." C. C. P., § 215. For the purpose of the declared trusts, the use and profit of the lands, quite as much as the lands, belong to the defendants and they have an equal right to have both

applied in reduction or extinguishment of the mortgage debt.

While there is great diversity of opinion among the witnesses as to the value of the property, and we may not understand the basis on which the larger estimates of the plaintiff's witnesses are placed when they speak of its "true value on the market," the evidence clearly discloses these facts—the insolvency of the plaintiff and his want of other resources to meet any possible deficiency—the large indebtedness accumulated as shown upon the face of the deeds, although liable to be greatly reduced by the counter-claims and other defences set up—the constant increase from unpaid interest, insurance premiums and taxes, which the profits from the occupation and use of the premises have not hitherto been applied to meet, and the uncertainty of a sufficient sum being raised by a forced sale to pay the incumbering demands. And these, in our opinion, entitle the defendant who is restrained from pursuing his legal rights, to the interposition of the court in taking such action as will secure the entire fund until the controversy is determined and the results of a sale made known. The court ought therefore to have granted the defendants' motion.

If upon a reference to ascertain the value of the annual rental of the conveyed premises and the attending expenses of insurance and taxation and the interest accruing on the secured debt, the plaintiffs will give bond with adequate security to discharge these expenses and pay the residue of the rental into the office of the clerk subject to the order of the court, His Honor may in his discretion adopt this method of securing the rents and profits, and dispense with the appointment of a receiver. Unless this is done a receiver must be appointed.

There is error in the ruling of the court and the judg-

ment must be reversed. This will be certified for further proceeding in the court below in accordance with this opinion.

Error. Reversed.