A. H. HURWITZ AND B. HURWITZ v. CAROLINA SAND AND GRAVEL
COMPANY AND JOHN A. ROYALL.

(Filed 24 January, 1925.)

**Injunction—Receiver—Accounting—Bond—Alternate Remedies—Courts.**

Injunctive relief will be afforded by equity when necessary to preserve the property rights of the party seeking it, but not when other and less drastic remedies will adequately do so; and where it appears that a gravel company, employing labor, and its operations affecting commercial conditions, is sought to be enjoined from exercising a continuous mining right, under its contract with the plaintiff, on the ground that, according to the necessarily incomplete information of the plaintiff, the defendant is not paying for the gravel under its agreement, according to tonnage mined: *Held*, the defendant, being in possession, and with the knowledge of the tonnage mined and being mined, should either give bond and file an accounting with the clerk of the court at stated periods, or a receiver should be appointed (C. S., 860), or, as a last resort, the injunctive relief granted, each of these remedies to be applied by the trial judge according to the necessities of the case, after inquiry into the relevant facts.

APPEAL by plaintiffs from *Lane, J.*, order, at chambers, 3 September, 1924, denying the motion of the plaintiffs for an injunction until the hearing.

The defendant, Royall, was not served with summons.

The contentions of the parties are as follows:

The plaintiffs allege that they sold and conveyed to John A. Royall, who sold to the defendant, Carolina Sand and Gravel Company, the sand, gravel and stone upon certain land in Moore County, to be quar-

ried, washed and removed, as appears by copy of the contract attached to the complaint; that the consideration for said sand, etc., as set forth in the contract, is as follows:

"The grantee, for himself, his heirs, administrators, executors and assigns, hereby contracts and agrees to pay to the said grantors, their heirs and assigns, a royalty of one cent per ton for every ton of said gravel, sand and stone removed from said two tracts of land, and guarantees that the royalties shall not be less than $600 per year for the period of five years from 15 June, 1919, payable quarterly; and it is hereby acknowledged, understood and agreed that the said grantee has this day paid to the said grantors $1,000 in cash, to be applied on the payment of said royalties at the rate of $200 per year for five years from 15 June, 1919, and if said royalties do not amount to $600 per year, then the said grantee, his heirs, administrators, executors, successors and assigns agree to pay to said grantors, their heirs, administrators, executors, successors and assigns such sum of money which, when added to said $200 part of said $1,000 paid as above stated, said royalties will equal the said amount of $600 per year, but if said royalties amount to more than $600 per year, said grantee, his heirs, administrators, executors, successors and assigns, shall pay said grantors, and their heirs, administrators, executors, successors and assigns, the amount of money which with the $200 before mentioned will amount to one cent per ton for all gravel, sand and stone removed from said two tracts of land for a period of five years from 15 June, 1919, and after the expiration of five years the said grantee, for himself, his heirs, administrators, executors, and successors and assigns, agree to pay said grantors, and their heirs, administrators, executors, successors and assigns, a royalty of one cent per ton for all gravel, stone and sand removed from said two tracts of land.

"And it is understood and agreed that if the grantee, his heirs, successors, administrators, executors and assigns shall default in the payment of the sums of money or royalties hereinbefore mentioned for the period of six months from the time they become due, then that all the rights and privileges, title and interest herein conveyed shall revert to the grantors, their heirs, administrators, executors, successors and assigns, and thereupon the grantors, their heirs, administrators, executors, successors and assigns, and the grantee, his heirs, administrators, executors, successors and assigns, shall be relieved from all obligations hereunder, except that under no circumstances shall the grantee, his heirs, administrators, executors, successors and assigns, be relieved from paying at least $600 per year, as above specified, during a period of five years, to the said grantors, their heirs, administrators, executors, successors and assigns.

"It is further agreed that when at any time before the expiration of five years from 15 June, 1919, as much as two thousand dollars royalties have been paid, exclusive of the one thousand dollars already paid, then and in that event the guarantee of $600 per year above provided shall cease, and from then on the grantee, his heirs and assigns, shall pay the grantors, their heirs and assigns, quarterly, one cent per ton for all gravel, sand and stone removed as aforesaid."

The contract further provides that the obligations imposed on John A. Royall and his heirs and assigns shall in like manner be imposed on his assigns, etc., in the present case the defendant Carolina Sand and Gravel Co. The contract further provides that Royall or his assigns "hereby agrees to keep a true and strict account of all gravel, sand and stone removed from said two tracts of land, and to furnish to the said grantors, and their heirs, administrators and assigns, an itemized statement of the same quarterly from the 15th day of June, 1919."

The complaint alleges:

"That owing to the geographical and physical shape, form, curvature, topography and condition of the surface of the land above described before entry thereon by the defendants for their mining operations in the removal of the sand, gravel and stone under the contract with plaintiffs as above set out, which sand, gravel and stone has been removed by the defendants in their mining operations in the manner and to the extent above set out, it is impossible for the plaintiffs to allege with certainty the tonnage of sand, gravel and stone removed from said lands by the defendants and for which the defendants are liable to plaintiffs, but from the best information obtainable with regard thereto, plaintiffs allege that defendants have removed from said lands more than 3,673,269 tons of sand, gravel and stone, and there is now due and owing plaintiffs in royalties by defendants therefor the sum of more than $33,732.69 for said land, gravel and stone.

"That the Carolina Sand and Gravel Company are now trespassing on said lands by continuing to remove therefrom the sand, gravel and stone of plaintiffs in large quantities, appropriating the same to its own use and refusing to account to plaintiffs therefor or to pay for same, to the untold hurt and irreparable damages of the plaintiffs."

The defendant, Carolina Sand and Gravel Co., answered the complaint and admitted the execution of the contract set out in the complaint from the plaintiffs to John A. Royall and from Royall to the answering defendant, but denied all other material allegations of the complaint. The contracts were duly recorded.

Upon hearing the motion for restraining order at chambers, the same was denied and the plaintiffs excepted, assigned error and appealed to the Supreme Court.

*W. R. Clegg for plaintiff.*
*H. F. Seawell for defendant.*

CLARKSON, J. Jeremy defines an injunction to be "a writ framed according to the circumstances of the case, commanding an act which this Court regards essential to justice, or restraining an act which it esteems contrary to equity and good conscience." Jeremy's Eq., p. 307.

"Injunction has been styled the 'strong arm' of equity to be used only to prevent irreparable injury to him who seeks its aid. . . . As a remedy for preventing wrongs and preserving rights the injunction has been regarded as more flexible and adjustable to circumstances than any other process known to law. The correctness of this estimate is seen in the readiness with which injunctions yield to the convenience of parties; the ease with which damages are substituted in their place when justice and the public interest so require; the facility with which a preventative and a mandatory injunction are made to coöperate so that by a single exercise of equitable power an injury is both restrained and repaired; and the facility with which injunctive relief can be applied to new conditions and adjusted to the changing emergencies of modern enterprise." Joyce on Injunctions, Vol. 1, part of sec. 2, pp. 4, 5.

In 14 R. C. L., part of sec. 43, it is said: "Inadequacy of the remedy at law is the basis on which a court of equity founds the exercise of its power to afford relief by injunction. If it appears to the satisfaction of the court that a person has a property right and that he has no means of protecting it from injury at the hands of another, the court may then exercise its extraordinary power."

C. S., 843, in part, is as follows:

"A temporary injunction may be issued by order in accordance with the provisions of this article. The order may be made by any judge of the Superior Court in the following cases, and shall be issued by the clerk of the court in which the action is required to be tried:

"1. When it appears by the complaint that the plaintiff is entitled to the relief demanded, and this relief, or any part thereof, consists in restraining the commission or continuance of some act the commission or continuance of which, during the litigation, would produce injury to the plaintiff, or

"2. When during the litigation, it appears by affidavit that a party thereto is doing, or threatens or is about to do, or is procuring or suffering some act to be done in violation of the rights of another party to the litigation respecting the subject of the action, and tending to render the judgment ineffectual."

C. S., 860, in part, is as follows:

"A receiver may be appointed—

"1.   Before judgment, on the application of either party, when he establishes an apparent right to property which is the subject of the action and in the possession of an adverse party, and the property or its rents and profits are in danger of being lost, or materially injured or impaired; except in cases where judgment upon failure to answer may be had on application to the court."

It will be noted that these statutes give broad and liberal powers.

In *Lumber Co. v. Wallace,* 93 N. C., p. 27, *Merrimon, J.,* in construing the above sections of The Code, says: "The provisions of The Code, secs. 338 and 379 (C. S., 843 and 860, *supra*), in express terms invest the court with very large and comprehensive powers to protect the rights and prevent the perpetration, or the continuance, of wrong in respect to the subject-matter of the action, and to take charge of and protect the property in controversy both before and after judgment, by injunctions and through receivers, pending the litigation; they facilitate and enlarge the authority of the courts in the exercise of these remedial agencies, and do not in any degree abridge the exercise of like general powers that appertain to courts of equity to grant the relief specified, or to grant perpetual injunctions in proper cases and the like relief."  .  .  .  (p. 30).  "It is against the policy of the law to restrain industries and such enterprises as tend to develop the country and its resources. It ought not to be done, unless in extreme cases, and this is not such an one. The court made its order granting an injunction until the hearing. This order must be so modified as to require the plaintiffs to execute a bond with approved security in such sum as the court may deem proper, payable to the defendants claiming the property, conditioned that the plaintiffs will pay to them all such damages and sums of money as the court may adjudge against them and in favor of the defendants upon the final determination of this action; and so, also, to appoint a receiver, who shall take, state and keep an accurate account of the timber that the plaintiffs shall now have on hand, and such as they shall cut henceforth until the final hearing of the action upon its merits, and make report to the court of his action as such receiver; and, further, so as to restrain the plaintiffs from removing such timber, or any part thereof, until the receiver shall take the account thereof as required by the order of the court appointing him. But if the plaintiffs cannot or will not give such bond, the court shall make such further order as to it may seem meet and just." *Lewis v. Lumber Co.,* 99 N. C., p. 11.

*Walker, J.,* in *Stewart v. Munger,* 174 N. C., p. 402, going into this matter thoroughly, citing and approving the cases, *supra,* and reason-

ing of *Merrimon, J.,* says, at p. 407: "While we are of the opinion that plaintiff is entitled to relief, we do not deem it necessary in this case, upon a review of the pleadings and affidavits, that resort should be had to so drastic a remedy as that of injunction, because we believe that the plaintiff's rights may be fully secured to him without seriously interfering with the operation of the defendant's extensive plant, which it has constructed at great expense to carry on the business of cutting and removing the timber for commercial purposes. Several of our cases justify a milder process for dealing with the matter, and we think it should be adopted, especially as plaintiff has been somewhat slow, if not remiss, in prosecuting his right, and looking on while defendant, if his evidence be true, was investing large sums of money in his plant and business."

In the present case, it appears that the defendant is a going concern. The plaintiffs had a contract with one Royall to quarry certain sand, gravel and stone on plaintiffs' land in Moore County, and defendant, Carolina Sand and Gravel Co., is assignee holding under this contract. This is not disputed by the record. The contract made provision for stipulated rent and royalties to be paid to plaintiff. From the undisputed facts here, the defendant is in possession of the land and taking out the sand, gravel and stone. Plaintiffs contend the rent and royalties are in arrearage and the contract forfeited. The defendant being in charge and control of the quarry operations and getting out the sand, gravel and stone, it is impossible for the plaintiffs to ascertain to what extent these operations are being carried on and what tonnage of sand, gravel and stone is being quarried and removed. Thus, it is impossible for plaintiffs to know what royalty they are entitled to under their contract. At the same time, it is important that defendant's operations should not be stopped by injunction, as it would, perhaps, seriously impair the credit of the defendant company, and, perhaps, as far as can be ascertained from the record, throw numerous persons out of employment and effect their livelihood. This sand, gravel and stone, by common knowledge, is useful in commerce and is of considerable value in building operations, roads, and for other purposes.

A court of equity looks always towards doing justice to the parties, and in good conscience protecting their rights until the final adjudication of the controversy through the courts. No protection given plaintiffs before the hearing would do them justice in this case. The courts of equity are gradually adjusting themselves to modern conditions and look to what in good conscience is for the best interest of the litigants, without resorting to any hard or fast rule.

We think by analogy to the cases cited and the statutes referred to, plaintiffs' rights under their contract should be safeguarded; at the

same time the defendant's commercial enterprise should not be seriously hampered. The injury, under the facts and circumstances of this case, is not such irreparable injury that plaintiffs' rights cannot be protected by defendant giving bond or a receiver being appointed—a less harsh method than a temporary injunction.

There was error in the ruling of the court below in denying the plaintiffs all relief. Under the authorities, above cited, and on the facts of this record, it would seem that the plaintiffs are entitled to have the defendant execute a bond for their protection and file weekly or monthly statements with the clerk of the Superior Court showing the amount of sand, gravel and stone quarried; or, if such will not meet the exigencies of the case, a receiver might be appointed, or, as a final resort, an injunction issued. But, we leave the exact order to the sound discretion of the chancellor or judge of the Superior Court, who will inquire into all the relevant facts of the case.

The object of the court should be to so mold its orders and decrees as to afford relief to plaintiffs as indicated in this opinion, and also to permit the defendant to prosecute its industry under just restraint for the benefit of plaintiff in case of their recovery. *Lumber Co. v. Wallace, supra,* p. 31.

It is so ordered.

Error.