**In re Ellen Grayce LoCURTO, Debtor.**

**Bankruptcy No. 99–00983–5–ATS.**

United States Bankruptcy Court,
E.D. North Carolina,
Raleigh Division.

Sept. 22, 1999.

Jeffrey M. Seigle, Raleigh, NC, for debtor.

Richard D. Sparkman, Richard D. Sparkman & Assoc., Angier, NC, Chapter 7 Trustee.

## ORDER REGARDING TRUSTEE'S OBJECTION TO EXEMPTIONS

A. THOMAS SMALL, Chief Judge.

The matter before the court is the objection filed by the chapter 7 trustee, Richard D. Sparkman, to the exemptions claimed by the chapter 7 debtor, Ellen Grayce LoCurto. A hearing was held in Raleigh, North Carolina on September 1, 1999.

Ms. LoCurto filed a petition for relief under chapter 7 of the Bankruptcy Code on May 5, 1999. Prior to filing the petition Ms. LoCurto entered into a settlement of a lawsuit against the National Press Photographers Association, Inc. ("NPPA") that was pending in the Superior Court for Durham County, North Carolina (Case No. 98–CVS–02882). Ms. LoCurto received $50,000, net of attorney's fees of $15,000, from the settlement, but did not list the settlement proceeds on her bankruptcy schedules. Ms. LoCurto's first chapter 7 trustee, Holmes P. Harden, learned of the settlement and notified Ms. LoCurto's attorney, Jeffrey M. Seigle, that the settlement proceeds had not been included in the schedules. Shortly thereafter the debtor amended her schedules to include the settlement proceeds and also amended her exemptions to claim the settlement proceeds as exempt under North Carolina General Statute § 1C–1601(a)(8).

Mr. Sparkman replaced Mr. Harden as the debtor's trustee and objected to the debtor's claim that the settlement proceeds are exempt. According to Mr. Sparkman, the amended exemption should be disallowed because the debtor did not initially list the settlement on her bankruptcy schedules. Additionally, the trustee contends that the settlement proceeds should not be exempt under North Carolina General Statute § 1C–1601(a)(8) because the settlement does not constitute compensation for personal injury as required by the statute.

### Amended Claim of Exemption

Rule 4003(a) of the Federal Rules of Bankruptcy Procedure provides that "[a] debtor shall list the property claimed as exempt under § 522 of the Code on the schedule of assets required to be filed by Rule 1007." Fed.R.Bankr.P. 4003(a). Rule 1009(a) of the Federal Rules of Bankruptcy Procedure provides that

[a] voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed. The debtor shall give notice of the amendment to the trustee and to any entity affected

thereby. On motion of a party in interest, after notice and a hearing, the court may order any voluntary petition, list, schedule, or statement to be amended and the clerk shall give notice of the amendment to entities designated by the court.

FED.R.BANKR.P. 1009(a).

■ As a general rule, amendments are liberally allowed, and Rule 1009 contains no limitation of the debtor's right to amend. The United States Court of Appeals for the Fourth Circuit in construing an amendment to exemptions made under former Bankruptcy Rule 110, which the court stated is essentially the same rule as present Rule 1009, held that "a court ordinarily does not have discretion to deny leave to amend or to require a showing of good cause." *In re Tignor*, 729 F.2d 977, 978 (4th Cir.1984). However, the court also observed that "exceptional circumstances may prevent the debtor in bankruptcy from amending his petition or schedules," *citing In re Doan*, 672 F.2d 831, 833 (11th Cir.1982), *Tignor*, 729 F.2d at 979. Some courts have precluded debtors from amending their schedules to claim exemptions in exceptional circumstances. The bankruptcy court in *In re Gregoire*, 210 B.R. 432 (Bankr.D.R.I.1997) denied an amended exemption because of the debtor's bad faith in filing his schedules.

The debtor contends that there was no bad faith on her part in failing to list the settlement proceeds on her bankruptcy schedules. According to Ms. LoCurto (and her attorney), she reviewed the petition and schedules in her attorney's office on March 17, 1998, and advised her attorney, Mr. Seigle, that the schedules were incorrect because the pending lawsuit was not included. Mr. Seigle did not correct the schedules, and when Ms. LoCurto signed the petition in his office on April 4, 1998, she again advised him that the proposed settlement of the lawsuit should be included. Mr. Seigle did not make the correction, and the incorrect petition was filed a month later on May 5, 1998, four days after the settlement was finalized.

The trustee contends that even if the failure to correct the schedules was the fault of debtor's counsel, Ms. LoCurto is ultimately responsible for the accuracy of her schedules and that because the schedules are erroneous she should be barred from claiming the settlement proceeds as exempt.

■ It is apparent to the court that the failure to list the settlement proceeds is not the only problem with the debtor's schedules; the values she placed on her jewelry seem unrealistically low. Nevertheless, the court finds that with respect to the settlement proceeds, the petition and her schedules were not filed in bad faith. The omission of the settlement was the fault of Ms. LoCurto's attorney, Mr. Seigle, and Ms. LoCurto relied on him to see that the schedules were corrected. Furthermore, the trustee is not prejudiced by the fact that the exemption was not claimed when the petition was filed. *See Tignor*, 729 F.2d at 979. Consequently, exceptional circumstances do not exist to preclude Ms. LoCurto from amending her schedules to claim the settlement proceeds as exempt.

### North Carolina General Statute § 1C–1601(a)(8)

North Carolina General Statute § 1C–1601(a)(8) provides an exemption for

[c]ompensation for personal injury or compensation for the death of a person upon whom the debtor was dependent for support, but such compensation is not exempt from claims for funeral, legal, medical, dental, hospital, and health care charges related to the accident or injury giving rise to the compensation.

N.C.GEN.STAT. § 1C–1601(a)(8) (1998).

According to the debtor, the settlement was to compensate her for personal physical injury and should be exempt. Specifically, she contends that her physical injuries were mental distress leading to

insomnia, abdominal reflux, anxiety and depression. The trustee maintains that the settlement was compensation for breach of contract and economic loss, not for personal injury, and is therefore not exempt under § 1C–1601(a)(8). The trustee has the burden of proof pursuant to Rule 4003(c) of the Federal Rules of Bankruptcy Procedure.

The Settlement Agreement and Release provides for a payment to Mrs. LoCurto of $65,000, $15,000 of which is for attorney's fees, and characterizes the settlement as payment for "non-economic tort and tort-type losses in the form of physical injury and physical sickness." The agreement in ¶ 1 reads as follows:

.... The payment referred to above is for LoCurto's alleged claim that she suffered non-economic tort and tort-type losses in the form of personal physical injury and physical sickness as a result of the end of her employment relationship with NPPA and certain statements made about LoCurto subsequent to her employment. The payment is not intended to compensate LoCurto for economic losses such as lost wages, lost earning capacity, and so forth. Defendants will not withhold federal or state income tax or any other withholdings from this payment and LoCurto agrees to be solely responsible for any tax liability.

Settlement Agreement and Release (Trustee Ex. # 4) ¶ 1 p. 2.

 The language of the settlement is helpful but not controlling. It is apparent from Ms. LoCurto's complaint against NPPA that she was seeking compensation, at least in part, for lost wages. The first count of her complaint requests damages for contractual wages of $15,228 plus unspecified fringe benefits. The second count alleges that NPPA violated the North Carolina Wage and Hour Act by failing to pay her wages and requests a recovery of twice the lost wages.

The remaining counts for Libel (Count No. 3), Sex Discrimination (Count No. 4),

Intentional Infliction of Emotional Distress (Count No. 5), and Negligent Infliction of Emotional Distress (Count No. 6) seek damages in unspecified amounts.

Under her employment contract with NPPA, Ms. LoCurto could be terminated by NPPA on 90–days notice. NPPA did not give her any notice, and she would be entitled to lost wages of $15,228. Consequently, the court finds that at least $15,-228 of the settlement represents income loss and concludes that $11,725.56 ($15,228 less pro rata attorney's fees of $3,502.44) is not exempt under North Carolina General Statute § 1C–1601(a)(8).

 The trustee argues that the balance of the settlement is also not exempt under § 1C–1601(a)(8) because the settlement does not compensate Ms. LoCurto for "bodily" injury. However, § 1C–1601(a)(8) does not require that the compensation for personal injury be for "bodily" injury.

The exemptions provided by the Bankruptcy Code in § 522(d)(11)(D) exempts payments in compensation, not to exceed $16,150 on account of "personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss[.]" 11 U.S.C. § 522(d)(11)(D). Likewise some state statutes restrict the personal injury exemption to bodily injury. *See In re Chapman,* 223 B.R. 137 (Bankr.N.D.Ill. 1998) (compensation for humiliation, embarrassment and mental distress not exempt under Illinois statute). But, North Carolina does not limit the personal injury exemption to "bodily" injury.

Personal injury is defined in Black's Law Dictionary as

1. In a negligence action, any harm caused to a person, such as a broken bone, a cut, or a bruise; bodily injury.

2. Any invasion of a personal right, including mental suffering and false imprisonment.

3. For purposes of workers' compensation, any harm (including a worsened

preexisting condition) that arises in the scope of employment.

Black's Law Dictionary 790 (7th ed.1999).

This court has held many times that North Carolina's exemption laws are to be liberally construed, and consistent with that policy and in the absence of any expression of limitation from either the North Carolina legislature or North Carolina's judiciary, the court concludes that the exemption provided by § 1C–1601(a)(8) is not limited to bodily injury and may include injuries for mental anguish. Accordingly, the balance of Ms. LoCurto's settlement with NPPA is exempt.

### Jewelry

■ The court has already mentioned that the debtor may have undervalued her jewelry in her bankruptcy schedules. In her schedules Ms. LoCurto lists jewelry worth $800. The trustee contends that this value is too low. Specifically, he maintains that Ms. Locurto owns a Rolex watch (insured for $7,300), a diamond ring (which the debtor claims is lost but is insured), a necklace and a gold bracelet.

■ The value of the jewelry claimed as exempt may in fact be more than the amount claimed, but for now the amount of the exemption will be limited to the amount claimed. If the trustee can show that the value of the jewelry exceeds that claimed as exempt, he may request the court's permission to sell the jewelry. The trustee is concerned that if he does sell the jewelry for more than the exemption amount, the debtor will amend her exemptions to claim the difference. As the court has already stated, amendments to exemptions are liberally allowed, but may also be denied in exceptional circumstances where the exemptions were not claimed in good faith, and there is prejudice to the trustee.

### Sanctions

■ Finally, although the trustee has not requested sanctions against Ms. LoCurto's counsel, Mr. Seigle, for filing inaccurate schedules, sanctions may be appropriate. The basic facts are not disputed by Mr. Seigle, but the court will hold a separate hearing pursuant to Rule 9011(c) of the Federal Rules of Bankruptcy Procedure to determine what sanctions, if any, will be imposed.

**SO ORDERED.**