IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-1179

 Filed: 18 September 2018

Chatham County, No. 14 CVS 684

JORIS HAARHUIS, ADMINISTRATOR OF THE ESTATE OF JULIE HAARHUIS,
(Deceased), Plaintiff,

 v.

EMILY CHEEK, Defendant.

 Appeal by plaintiff from order entered 25 July 2017 by Judge Elaine M. O’Neal

in Chatham County Superior Court. Heard in the Court of Appeals 22 March 2018.

 Copeley Johnson & Groninger, PLLC, by Leto Copeley and Drew H. Culler, for
 plaintiff-appellant.

 Burton, Sue & Anderson, LLP, by Walter K. Burton and Stephanie W.
 Anderson, and Ivey, McClellan, Gatton & Siegmund, L.L.P, by Charles Ivey,
 IV, for defendant-appellee.

 McAngus, Goudelock & Courie, PLLC, by John P. Barringer and Jeffrey B.
 Kuykendal, for Universal Insurance Company.

 Poyner Spruill LLP, by Cynthia L. Van Horne, for Burton, Sue & Anderson,
 LLP.

 ZACHARY, Judge.

 Plaintiff Joris Haarhuis, as administrator of the estate of Julie Haarhuis,

appeals from the trial court’s order denying his Motion for Appointment of Receiver

over defendant’s unliquidated legal claims against third-parties. We reverse.

 Background
 HAARHUIS V. CHEEK

 Opinion of the Court

 Defendant Emily Cheek was driving while impaired in July 2013 when she hit

and killed pedestrian Julie Haarhuis. Ms. Haarhuis’s husband, Joris Haarhuis,

qualified as administrator of his wife’s estate.

 At the time of the crash, Universal Insurance Company insured defendant’s

vehicle. Universal determined that the value of plaintiff’s claim exceeded the limits

of defendant’s $50,000 policy. On 2 September 2014, pursuant to Universal’s offer,

plaintiff agreed to release its claims against defendant in exchange for payment of

the $50,000 policy limit, on the condition that payment be made within ten days.

Universal received plaintiff’s acceptance that same day. Two days later, Universal

retained an attorney from Burton, Sue & Anderson, LLP (“Burton”) to represent

defendant to the extent of the policy limits. Universal forwarded plaintiff’s settlement

demand to the attorney. However, by the time plaintiff’s settlement offer expired on

12 September 2014, plaintiff had not received a response from Universal or Burton.

Plaintiff filed suit the next week, on 19 September 2014.

 As the litigation proceeded, plaintiff again offered to settle, this time in

exchange for a $2 million consent judgment, but plaintiff required Universal’s

approval. One week later, the attorney representing defendant on her exposure in

excess of the policy limits wrote to Universal on defendant’s behalf and demanded

that it agree to settle the claims against her. This settlement would have permitted

defendant to seek relief in bankruptcy. However, roughly one month later, plaintiff

 -2-
 HAARHUIS V. CHEEK

 Opinion of the Court

was informed that Universal would not approve the $2 million consent judgment.

Plaintiff posits that Universal preferred that defendant not seek relief in bankruptcy,

for fear that the bankruptcy trustee would pursue litigation on defendant’s behalf

against Universal for its failure to settle the case initially for $50,000. The case then

went to trial, and on 28 April 2017 the jury entered a verdict against defendant for

$4.25 million in compensatory damages and $45,000 in punitive damages. However,

the Chatham County Sheriff’s Office returned the writ of execution unsatisfied, as

the deputy “did not locate property on which to levy” and “[d]efendant refused to pay.”

 One year later, with the judgment still unsatisfied, plaintiff filed a Motion for

Appointment of Receiver pursuant to N.C. Gen. Stat. § 1-363. Plaintiff maintained

that defendant possessed property in the form of unliquidated legal claims against

Universal and Burton for their actions in causing defendant to be encumbered with

a judgment of nearly $4.3 million. Specifically, plaintiff is of the position that

defendant has legal claims against Universal, “including claims for breach of

contract, breach of the duty of good faith and fair dealing, unfair trade practice, and

tortious bad faith[,]” and against Burton for “breach of fiduciary duty and failure to

meet the standard of care[.]”

 According to plaintiff,

 [t]he potential choses in action described above must be
 sued upon promptly or the applicable statute of limitations
 may bar an action. Defendant is wasting valuable time by
 her failure to take prompt legal action to recover money for

 -3-
 HAARHUIS V. CHEEK

 Opinion of the Court

 the choses in action. Defendant, by her delay in pursuing
 the choses in action, is in the process of causing irreparable
 harm to Plaintiff, as Defendant has no other apparent
 means of satisfying the judgment against her.

Plaintiff therefore sought to have a receiver appointed of defendant’s choses in action

against Universal and Burton.

 The trial court heard plaintiff’s Motion for Appointment of Receiver on 5 June

2017. Plaintiff’s and defendant’s counsel appeared at the hearing; however, counsel

for Universal and Burton appeared as well. Plaintiff objected to the appearances of

Universal and Burton for lack of standing as potential debtors of defendant, but the

trial court nevertheless permitted Universal and Burton to argue against the

appointment of a receiver. Following the hearing, the trial court entered an order

containing the following findings and conclusions:

 19. Defendant does not wish to have a receiver appointed for
 any purpose.

 ...

 1. N.C. Gen. Stat. § 1-502 specifies when a receiver may be
 appointed. The circumstances of this case do not apply as
 the appointment of a receiver in this case would not “carry
 the judgment into effect,” it would not “dispose of the
 property according to the judgment,” it would not “preserve
 [the property] during the pendency of an appeal” and this is
 not a case in which the “judgment debtor refuses to apply
 his property in satisfaction of the judgment.” See N.C. Gen.
 Stat. § 1-502(2) & (3).

 -4-
 HAARHUIS V. CHEEK

 Opinion of the Court

 2. The appointment of a receiver is within the discretion of
 the Court. See Barnes v. Kochar, 178 N.C. App. 489, 500,
 633 S.E.2d 474, 481 (2006).

 3. The appointment of a receiver is an equitable remedy.
 See Jones v. Jones, 187 N.C. 589, 592, 122 S.E. 370, 371
 (1924) (“[t]he appointment of a receiver is equitable in its
 nature and based on the idea that there is no adequate
 remedy at law, and is intended to prevent injury to the thing
 in controversy”).

 4. The court finds that the defendant has asserted that she
 has no property that, to a reasonable degree, could be
 subject to execution.

The trial court thereafter denied plaintiff’s Motion for Appointment of Receiver.

Plaintiff timely appealed.

 Discussion

 On appeal, plaintiff presents the following questions to this Court: (1) “Where

a judgment creditor shows the court that a judgment debtor has unliquidated legal

claims that she refuses to pursue, may the trial court refuse to appoint a receiver?”

and (2) “Did the trial court properly allow non-party debtors of Defendant-Appellee

judgment debtor to oppose appointment of a receiver?” We first consider plaintiff’s

argument concerning standing.

 A. Standing

 Plaintiff argues that the trial court erred when it heard and considered the

arguments of Universal and Burton at the receivership hearing because “debtors of a

 -5-
 HAARHUIS V. CHEEK

 Opinion of the Court

judgment debtor have no standing to object to the appointment of a receiver in aid of

execution[.]” We agree.

 It is well settled that the debtor of a judgment-debtor lacks standing to object

to the appointment of a receiver, as the debtor is not the “party aggrieved” in the

underlying action. Lone Star Industries, Inc. v. Ready Mixed Concrete of Wilmington,

Inc., 68 N.C. App. 308, 309, 314 S.E.2d 302, 303 (1984). In Lone Star Industries, Inc.,

the trial court appointed a receiver over certain property of the judgment debtor-

corporation at the behest of the judgment-creditor. Id. at 308-09, 314 S.E.2d at 302-

03. The judgment-creditor claimed that the judgment-debtor possessed unliquidated

legal claims against one of its shareholders and one of its former shareholders. Id. at

309, 314 S.E.2d at 303. Upon appointment of a receiver over that property, the

shareholders appealed. Id. With regard to whether the shareholder-appellants had

standing to contest the receivership, this Court stated:

 That [the shareholder-debtors] are opposed to the
 defendant debtor receiving the benefit of that property is
 understandable; but that they were able to assert their
 opposition in this case for so long under the circumstances
 is not. The [shareholder-debtors] have no standing in this
 Court and should have had none in the court below. They
 are not parties to the case, and, even if they were, their
 interests are entirely antagonistic to the debtor
 corporation, whose own interests clearly require that any
 sums that are owed it by others be promptly applied to its
 debts.

Id.

 -6-
 HAARHUIS V. CHEEK

 Opinion of the Court

 The same is true in the instant case. Universal and Burton were not, and are

not, parties to the action between plaintiff and defendant, and their interests are

“entirely antagonistic” to those of defendant, being that they are her potential

debtors. Nor would Universal or Burton be legally aggrieved in the instant case by

the appointment of a receiver. Accordingly, because Universal and Burton do not have

standing to challenge the appointment of a receiver in the instant case, they were not

properly before the trial court, and they are not properly before this Court. We do not

consider their arguments, and the trial court erred in doing so.

 B. Receivership

 Next, plaintiff argues that the trial court erred when it denied plaintiff’s

Motion for Appointment of Receiver. According to plaintiff, the particular

circumstances at issue in the instant case entitled plaintiff to have a receiver

appointed in order for the receiver to investigate prosecution of defendant’s

unliquidated legal claims against Universal and Burton so that those funds can be

applied in satisfaction of the underlying judgment. Defendant, however, argues that

North Carolina law “does not mandate appointment of a receiver[,]” and that the trial

court did not abuse its discretion when it declined to do so in the instant case.

(emphasis added). Specifically, defendant maintains that plaintiff’s motion was

properly denied first, because the causes of action that plaintiff wants placed in

receivership are unassignable under North Carolina law, and second, because those

 -7-
 HAARHUIS V. CHEEK

 Opinion of the Court

claims are merely “potential or speculative.” For the reasons explained below, we find

plaintiff’s arguments persuasive.

 I.

 Civil judgments for money damages are typically enforced through the process

of execution. N.C. Gen. Stat. § 1-302 (2017). Execution is accomplished through the

levying of the judgment-debtor’s property, i.e., its physical seizing and subsequent

sale. Therefore, property that may be reached by execution typically includes only

tangible property or property otherwise represented by instrument. See N.C. Gen.

Stat. § 1-315(a) (2017). Instances may arise, however, in which a judgment-debtor

has no such tangible property that can be reached by execution; therefore, the

outstanding judgment remains unsatisfied. In such a case, Chapter 1, Article 31 of

the General Statutes allows for the following supplemental proceeding:

 The court or judge having jurisdiction over the
 appointment of receivers may also by order in like manner,
 and with like authority, appoint a receiver . . . of the
 property of the judgment debtor, whether subject or not to
 be sold under execution, except the homestead and
 personal property exemptions.

N.C. Gen. Stat. § 1-363 (2017).1 “[A]fter execution against a judgment debtor is

returned unsatisfied[,]” receivership is allowed as a last-resort attempt “to aid

 1 N.C. Gen. Stat. § 1-502 likewise addresses “the powers of the courts to appoint receivers
generally[.]” Coates Bros. v. Wilkes, 92 N.C. 377, 383 (1885). Section 1-502(3) provides that a receiver
may also be appointed “after judgment” when, inter alia, “an execution has been returned unsatisfied,
and the judgment debtor refuses to apply his property in satisfaction of the judgment.” N.C. Gen. Stat.

 -8-
 HAARHUIS V. CHEEK

 Opinion of the Court

creditors to reach the property of every kind subject to the payment of debts which

cannot be reached by the ordinary process of execution.” Massey v. Cates, 2 N.C. App.

162, 164, 162 S.E.2d 589, 591 (1968). Such a proceeding is “equitable in nature.” Id.

“[I]t is elementary that a Court of Equity has the inherent power to appoint a receiver,

notwithstanding specific statutory authorization.” Lowder v. All Star Mills, Inc., 301

N.C. 561, 576, 273 S.E.2d 247, 256 (1981) (citing Skinner v. Maxwell, 66 N.C. 45, 48

(1872)).

 Section 1-363 exempts only two classes of property from the scope of

receivership: “the homestead and personal property exemptions” provided in N.C.

Gen. Stat. § 1C-1601(a). Otherwise, Section 1-363 contemplates that a receiver may

be appointed in order to facilitate prosecution of an unliquidated legal claim that a

judgment-debtor might have against a third party. See e.g., N.C. Gen. Stat. § 1-366

(2017); N.C. Gen. Stat. § 1-360 (2017); Carson v. Oates, 64 N.C. 115 (1870). For

instance, N.C. Gen. Stat. § 1-366, “Receiver to sue debtors of judgment debtor,”

explicitly addresses the situation in which a judgment-debtor’s property takes the

form of a contested debt. That section provides:

 If it appears that a person . . . alleged to have property of
 the judgment debtor, or indebted to him, claims an interest
 in the property adverse to him, or denies the debt, such
 interest or debt is recoverable only in an action against
 such person . . . by the receiver[.]

§ 1-502(3) (2017). The trial court primarily relied on this section in its order denying plaintiff’s Motion
for Appointment of Receiver.

 -9-
 HAARHUIS V. CHEEK

 Opinion of the Court

N.C. Gen. Stat. § 1-366 (2017). Additionally, in analyzing the reach of Section 1-363,

our Supreme Court has stated that “[i]t is an important part of the duties of the

receiver to take possession and get control of the property of the judgment debtor,

whether in possession or action, as soon as practicable, and to bring all actions

necessary to secure and recover such property as may be in the hands of third parties,

however they may hold and claim the same[.]” Coates Bros., 92 N.C. at 380. In other

words, as defendant concedes, both statute and case law “enable[] a receiver to sue

those who owe the judgment debtor.”

 The authority of a receiver to pursue a judgment-debtor’s legal claims is not

limited solely to those claims that are otherwise assignable. It is important to note

that receivership is distinct from assignment. “The assignment of a claim gives the

assignee control of the claim and promotes champerty[,]” and is therefore void as

against public policy. Charlotte-Mecklenburg Hosp. Auth. v. First of Ga. Ins. Co., 340

N.C. 88, 91, 455 S.E.2d 655, 657 (1995) (citing Southern Railway Co. v. O’Boyle Tank

Lines, Inc., 70 N.C. App. 1, 318 S.E.2d 872 (1984)). On the other hand, a “receiver” is

“[a] disinterested person appointed by a court . . . for the protection or collection of

property that is the subject of diverse claims[.]” Receiver, BLACK’S LAW DICTIONARY,

1296 (8th ed. 2014). Specifically, a “judgment receiver” “collects or diverts funds from

a judgment debtor to the creditor. A judgment receiver is usu[ally] appointed when it

is difficult to enforce a judgment in any other manner.” Judgment Receiver, BLACK’S

 - 10 -
 HAARHUIS V. CHEEK

 Opinion of the Court

LAW DICTIONARY, 1296 (8th ed. 2014). Thus, in the case of receivership, the judgment-

creditor exercises no control over the judgment-debtor’s legal claims. Rather, the

receiver does so independently of the judgment-creditor and under the supervision

and control of the court. Lambeth v. Lambeth, 249 N.C. 315, 321, 106 S.E.2d 491, 495

(1959) (citations omitted) (“The receiver is an officer of the court and is amenable to

its instruction in the performance of his duties; and the custody of the receiver is the

custody of the law.”). The purpose of a receiver of legal claims is in essence to act as

a trustee, and a claim being placed in receivership is, at most, analogous to an

assignment of the proceeds of the claim, which are assignable. Charlotte-Mecklenburg

Hosp. Auth., 340 N.C. at 91, 455 S.E.2d at 657 (“The assignment of the proceeds of a

claim does not give the assignee control of the case and there is no reason it should

not be valid.”).

 Moreover, “many exceptions to the principles of champerty . . . have been

recognized and . . . it has come to be generally accepted that an agreement will not be

held to be within the condemnation of the principle[] unless the interference is clearly

officious and for the purpose of stirring up strife and continuing litigation.” Wright

v. Commercial Union Ins. Co., 63 N.C. App. 465, 469, 305 S.E.2d 190, 192-93 (1983)

(citation and quotation marks omitted). Such concerns are clearly not at issue where

a cause of action is in receivership for the purpose of satisfying an outstanding

judgment. Nor is it true that the injured judgment-debtor would have no stake in the

 - 11 -
 HAARHUIS V. CHEEK

 Opinion of the Court

outcome of her claims against her own debtor by virtue of those claims being placed

in receivership. Instead, the judgment-debtor’s interests will “clearly require that any

sums that are owed it by others be promptly applied to its debts.” Lone Star Indus.,

Inc. 68 N.C. App. at 309, 314 S.E.2d at 303. The judgment-debtor would also have an

interest in any recovery that exceeds the amount of debt she owes to the judgment-

creditor. Thus, if a receiver elects to pursue a cause of action held by a judgment-

debtor and the judgment-debtor prevails thereon, the debtor receives the full benefit

of the award. That a portion of that award would in turn be applied to satisfy a

pending outstanding judgment simultaneously owed by the judgment-debtor is

beyond the purview of the public policy concerns that prohibit claim assignment. See,

e.g., Anthony J. Sebok, The Inauthentic Claim, 64 Vand. L. Rev. 61, 131 (2011) (“The

victim’s right to assign her right to redress does not destroy the defendant’s duty to

make repair to her, even if the remedy does not go to her, any more than the fact that

a victim may no longer be alive, and may be represented by an estate in a survivorship

action alters the defendant’s duty in corrective justice to repair the wrongful loss he

caused.”).

 Likewise, defendant also notes that “compensation for personal injury” is

exempt from enforcement of certain claims by creditors pursuant to N.C. Gen. Stat.

§ 1C-1601(a)(8) (2017). As discussed supra, however, the General Assembly included

only two Section 1C-1601(a) exemptions into Section 1-363: “the homestead and

 - 12 -
 HAARHUIS V. CHEEK

 Opinion of the Court

personal property exemptions.” N.C. Gen. Stat. § 1-363. The Section 1C-1601(a)(8)

compensation for personal injury exemption is explicitly excluded from the Section 1-

363 supplemental proceeding, and the General Assembly likewise made clear that

property may be placed in receivership thereunder “whether subject or not to be sold

under execution[.]” Id. (emphasis added). This language is clear and unambiguous,

and we are “not at liberty to divine a different meaning through other methods of

judicial construction.” State v. Hooper, 358 N.C. 122, 126, 591 S.E.2d 514, 516-17

(2004) (citing Burgess v. Your House of Raleigh, Inc., 326 N.C. 205, 209, 388 S.E.2d

134, 136 (1990)). Our General Assembly has therefore sanctioned—via supplemental

receivership proceedings—the application of personal injury proceeds toward the

satisfaction of a judgment-creditor’s outstanding judgment. Such a prerogative is

immune from our tampering. Fagundes v. Ammons Dev. Grp., Inc., ___ N.C. App.

___, ___, 796 S.E.2d 529, 533 (2017).

 The limits on the scope of property that may be placed within the control of

receivership in the event that execution is returned unsatisfied are found within the

receivership statutes themselves. Quite plainly, no law in North Carolina provides

that a receiver may only transfer a judgment-debtor’s recovery so long as the

underlying claim would have been assignable, and so long as the underlying claim is

not a personal injury claim. In fact, the law in this State is precisely to the contrary.

The supplemental receivership proceeding operates to allow an otherwise helpless

 - 13 -
 HAARHUIS V. CHEEK

 Opinion of the Court

judgment-creditor to reach the judgment-debtor’s property that cannot “be

successfully reached by the ordinary process of execution[.]” Coates Bros., 92 N.C. at

379.

 In determining whether a judgment-creditor is entitled to have a receiver of

this form appointed, the trial court need not be convinced that the defendant will

prevail on her legal claim. “To warrant the appointment of a receiver, it need not

appear, certainly or conclusively, that the defendant has property that he ought to

apply to the judgment[.]” Id. at 384. Rather, equity authorizes the appointment of a

receiver so long as the party seeking the same “establishes an apparent right to

property[.]” Neighbors v. Evans, 210 N.C. 550, 554, 187 S.E. 796, 797 (1936)

(emphasis added). “[I]f there is evidence tending in a reasonable degree to show that

[the judgment-debtor] probably has such property, this is sufficient[.]” Coates Bros.,

92 N.C. at 384. Once an apparent right to property is shown, it becomes the task of

the receiver, rather than the trial court, to determine whether any given “apparent

right to property” is indeed worth pursuing:

 The judgment debtor cannot complain at the
 appointment of a receiver. If [she] has property subject to
 the payment of [her] debt, it ought to be applied to it; if
 [she] has not such property, this fact ought to appear, with
 reasonable certainty, to the satisfaction of the creditor. The
 receiver proceeds to do this, not at the peril of the debtor,
 but at his own peril, as to costs, if he fails in his action. The
 purpose of the law in such proceedings is to afford the
 largest and most thorough means of scrutiny, legal and
 equitable in their character, in reaching such property as

 - 14 -
 HAARHUIS V. CHEEK

 Opinion of the Court

 the debtor has, that ought justly go to the discharge of the
 debt his creditor has against him.

 It thus appears that supplementary proceedings are
 incident to the action, equitable in their nature, and that .
 . . a receiver may be appointed as occasion may require.

Id. at 381.

 II.

 That appointing a receiver of defendant’s unliquidated causes of action against

Universal and Burton was a potential remedy available to plaintiff as a judgment-

creditor did not, as defendant puts it, mandate that plaintiff had an “absolute right

to the appointment of a receiver” in the instant case. Indeed, a trial court’s decision

whether to appoint a receiver is ordinarily reviewed under an abuse of discretion

standard. Williams v. Liggett, 113 N.C. App. 812, 815, 440 S.E.2d 331, 333 (1994)

(citing Murphy v. Murphy, 261 N.C. 95, 101, 134 S.E.2d 148, 153 (1964)).

Nonetheless, courts are vested with the power to appoint a receiver “[b]y statute and

under general equitable principles[.]” Murphy, 261 N.C. at 101, 134 S.E.2d at 153

(citation omitted). That equitable nature renders the abuse of discretion standard

somewhat nuanced in receivership matters. For example, where a trial court appoints

a receiver contrary to its statutory power to do so, it is said that the trial court has

abused its discretion. E.g., Williams, 113 N.C. App. at 815-17, 440 S.E.2d at 333-34.

But where a receivership is otherwise permitted by law, whether one ought to be

appointed must be adjudged according to the equities of the particular case at hand.

 - 15 -
 HAARHUIS V. CHEEK

 Opinion of the Court

E.g., Coates Bros., 92 N.C. at 385; see also Lowder, 301 N.C. at 576-77, 273 S.E.2d at

256; Murphy, 261 N.C. at 101, 134 S.E.2d at 153-154; Hurwitz v. Carolina Sand &

Gravel Co., 189 N.C. 1, 6-7, 126 S.E. 171, 173-74 (1925); Oldham v. First Nat’l Bank,

84 N.C. 304, 308 (1881). That equitable determination does not “rest[] solely in the

discretion of the [trial court],” but is instead fully “reviewable by this Court upon

appeal.” Coates Bros., 92 N.C. at 386, 387 (citations omitted).

 For instance, while the compensation for personal injury exemption and the

prohibition against claim assignment do not serve as a direct bar to the types of

property over which a receiver may be appointed, that is not to say that the public

policies underlying those rules would be wholly immaterial to the determination of

whether it is equitable to appoint a receiver over a legal claim in any given case.

Indeed, the purpose of receivership “ ‘is to afford the largest and most thorough means

of scrutiny, legal and equitable in their character, in reaching such property as the

debtor has, that ought justly to go to the discharge of the debt his creditor has against

him.’ ” Massey, 2 N.C. App. at 166, 162 S.E.2d at 592 (quoting Coates Bros., 92 N.C.

at 381) (emphasis added). The hypothetical policy concerns posed by our concurring

colleague would—if such cases were to arise—be appropriately considered in the

examination of the particular equities at issue. E.g., Hurwitz, 189 N.C. at 6, 126 S.E.

at 173 (“The courts of equity are gradually adjusting themselves to modern conditions

 - 16 -
 HAARHUIS V. CHEEK

 Opinion of the Court

and look to what in good conscience is for the best interest of the litigants, without

resorting to any hard or fast rule.”).

 Turning to that analysis in the instant case, we agree with plaintiff that the

circumstances are such that equity calls to error the trial court’s refusal to appoint a

receiver.

 As discussed supra, upon plaintiff’s Motion for Appointment of Receiver after

having completely “exhausted his remedy at law by the ordinary process of

execution,” Coates Bros., 92 N.C. at 379, the relevant inquiry for the court became

whether it appears that defendant might indeed be entitled to such unliquidated

property, and if so, then whether the circumstances at issue are such that equity

would warrant that the unliquidated claims and resulting judgments remain solely

within defendant’s control. Neighbors, 210 N.C. at 554, 187 S.E. at 797; see Hurwitz,

189 N.C. at 6-7, 126 S.E. at 173. Unless such equity-barring circumstances are

present, it has been the law in this State for some time that plaintiff was entitled to

have a receiver appointed “almost as of course[.]” Coates Bros., 92 N.C. at 380, 379

(“In effectuating this purpose, it very frequently becomes necessary to grant relief by

. . . the appointment of a receiver[.]”).

 In the case at bar, it is sufficient that the circumstances are such so as to

indicate that plaintiff has potential causes of action against Universal and Burton.

We need not express opinion as to the merits of those claims—that is for the receiver

 - 17 -
 HAARHUIS V. CHEEK

 Opinion of the Court

to decide. Id. at 381. Nor does the record reveal any equitable grounds on which the

decision whether to pursue defendant’s apparent claims against Universal and

Burton ought to remain within her sole control. It is alleged that Universal and

Burton are indebted to defendant as a result of acts in connection with the underlying

litigation in the instant case, and that the proceeds of the claims could be used to

satisfy plaintiff’s injuries if defendant were to pursue them. Nevertheless, defendant

refuses to do so, despite the fact that pursuit of the claims could benefit both parties.

E.g. Hurwitz, 189 N.C. at 6-7, 126 S.E. at 173-74. If the receiver is able to prosecute

defendant’s claims to fruition, defendant will “be provided the protection afforded”

therefrom; that is, defendant would be relieved of the burden of the judgment against

her. Investors Title Ins. Co. v. Herzig, 330 N.C. 681, 689, 413 S.E.2d 268, 272 (1992).

Moreover, any judgment obtained against Universal or Burton would be

compensation merely for a monetary loss suffered by defendant incident to the

underlying action, rather than for an unrelated injury purely “personal” to her so as

to render its transfer inequitable despite statutory authorization. Cf. Brantley v.

CitiFinancial, Inc., 2015 Bankr. LEXIS 129, *9 (citing In re LoCurto, 239 B.R. 314

(Bankr. E.D.N.C. 1999)) (It is true that “the definition of personal injury [under

section 1C-1601(a)(8)] is not limited to a physical bodily injury under North Carolina

law; however, in order to fall under the exemption, the injury leading to the

compensation should rise to a level of severe emotional distress” where it does not

 - 18 -
 HAARHUIS V. CHEEK

 Opinion of the Court

otherwise involve bodily injury.). Nor would pursuit and transfer to plaintiff of

defendant’s recovery from Universal and Burton result in plaintiff “receiving a

windfall from another person’s injury.” Herzig, 330 N.C. at 689, 413 S.E.2d at 272.

To the contrary, satisfaction of the outstanding judgment in the instant case and the

potential recovery to defendant from Universal and/or Burton would be inextricably

interwoven, with any transfer of the latter to plaintiff representing precisely that

which the jury has determined plaintiff is owed. Indeed, plaintiff requested that the

trial court appoint a receiver only over claims that are “related to matters that arose

from the wreck which killed Julie Haarhuis[.]” Lastly, the outstanding judgment that

defendant owes to plaintiff is significant, and there are no other apparent means by

which defendant could satisfy the judgment. See Oldham, 84 N.C. at 308.

 The confluence of these distinct factors “comes directly within the equitable

principle[s] . . . which justif[y] and call[] for the appointment of a receiver” for the

purpose of determining whether the merits of defendant’s claims against Universal

and Burton are worth pursuing and, if so, prosecuting the same. People’s Nat’l Bank

v. Waggoner, 185 N.C. 297, 302, 117 S.E. 6, 9 (1923). We therefore conclude that, in

light of the circumstances at issue, it was error for the trial court to deny plaintiff’s

Motion for Appointment of Receiver. See Coates Bros., 92 N.C. at 385 (“It is sufficient

that we are satisfied that the facts were such as to warrant and require the

appointment of a receiver as demanded by the plaintiffs.”); Oldham, 84 N.C. at 308

 - 19 -
 HAARHUIS V. CHEEK

 Opinion of the Court

(“And these [circumstances], in our opinion, entitle the defendant who is restrained

from pursuing his legal rights, to the interposition of the Court in taking such action

as [appointing a receiver]. The Court ought therefore to have granted the defendant’s

motion”); cf. Hurwitz, 189 N.C. at 7, 126 S.E. at 174.

 Conclusion

 For the reasons set forth herein, the trial court’s order denying plaintiff’s

Motion for Appointment of Receiver is

 REVERSED.

 Judge HUNTER, JR. concurs.

 Judge DIETZ concurs by separate opinion.

 - 20 -
 No. COA17-1179 – Haarhuis v. Cheek

 DIETZ, Judge, concurring.

 The Court’s holding in this case is compelled by the plain language of the

applicable receivership statute enacted by our General Assembly. The outcome, as

the appellees point out in their briefs, is at odds with common law principles that

prohibit the assignment or transfer of personal injury claims. See Investors Title Ins.

Co. v. Herzig, 330 N.C. 681, 688, 413 S.E.2d 268, 271 (1992). But the General

Assembly can reject the common law by statute, and I agree that the plain language

of N.C. Gen. Stat. § 1-363 indicates that the legislature did so here.

 The appellees also argue, compellingly, that it is bad policy to permit a receiver

to take a debtor’s personal injury claim against a third party, prosecute it, and give

the proceeds to creditors. The most common beneficiaries of this statute are not

sympathetic individuals like Mr. Haarhuis, who lost his wife in a tragic accident—

they are banks, debt collectors, and other businesses that frequently seek to enforce

money judgments against low-income debtors who have no other assets besides their

personal injury claim against a third party. But this Court is “an error-correcting

body, not a policy-making or law-making one.” Fagundes v. Ammons Dev. Grp., Inc.,

__ N.C. App. __, __, 796 S.E.2d 529, 533 (2017). Our role is not to weigh the merits of

the policies underlying a statute, but to interpret and enforce the statute as it is

written. Here, the General Assembly could have limited the types of claims subject to

post-judgment receivership, but it chose not to. We must honor that policy decision

by the legislative branch.