IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA20-111

Filed: 20 October 2020

Pender County, No. 18 CVS 1019

JULIE ANN STAHL, Individually, and Julie Ann Stahl as Administratrix for the Estate of Kenneth Newton Stahl, Plaintiffs,

v.

DANIEL BOWDEN, (In His Individual Capacity), Defendant.

Appeal by defendant from order entered 7 October 2019 by Judge Andrew T. Heath in Pender County Superior Court. Heard in the Court of Appeals 25 August 2020.

*Baker Law Firm, PLLC, by H. Mitchell Baker, III, and Collins Law Firm, by David B. Collins, Jr., for plaintiffs-appellees.*

*Womble Bond Dickinson (US) LLP, by Christopher J. Geis, for defendant-appellant.*

ZACHARY, Judge.

Defendant Daniel Bowden appeals from an order denying his motion for summary judgment. After careful review, we dismiss his appeal as interlocutory.

## *Background*

Defendant was employed as a dispatcher in the Pender County 911 Communications Center, which is operated by the Pender County Sheriff's Office.

On 7 February 2017, Defendant fielded a call from a person reporting a downed stop sign at the intersection of Malpass Corner Road and U.S. Highway 421. The eastbound intersection of Malpass Corner Road and U.S. Highway 421 had two stop

signs: one sign, mounted on the right shoulder of the road, and a supplemental sign, mounted on a concrete median.

The caller told Defendant, "[T]hat's a dangerous intersection for there not to be a Stop Sign up." Defendant replied: "Yes ma'am, it is." He confirmed the location of the downed sign, and then told the caller, "[w]e will definitely let DOT know." No record exists of any communication from Defendant to the North Carolina Department of Transportation ("DOT") regarding that report.

On 10 February 2017, Plaintiffs were traveling from Florida to visit family in Newport, North Carolina. Julie Stahl was driving, with her husband Kenneth riding in the front passenger seat. Plaintiffs were heading east on Malpass Corner Road when they approached Highway 421; Julie did not stop, and Plaintiffs entered the intersection traveling at approximately 40 miles per hour. The stop sign mounted on the median was down.

Plaintiffs' vehicle collided with a tractor trailer heading north on U.S. Highway 421, overturned, and came to rest in a ditch on the northbound side of U.S. Highway 421. Julie suffered serious injuries, and Kenneth died from the injuries he suffered in the collision.

The next day, on 11 February 2017, the caller who had initially reported the downed stop sign called the Pender County 911 Communications Center again. This time, the caller did not speak with Defendant; a different dispatcher fielded the call.

After reporting that the stop sign was still down, the caller added: "I called earlier this week and they still haven't come to put it back up and someone was killed at that intersection last night." The dispatcher emailed DOT, and DOT engineers righted the downed stop sign within two hours.

On 7 August 2018, Plaintiffs filed suit in New Hanover Superior Court against Defendant individually, alleging both negligence and gross negligence, and seeking damages resulting from the personal injuries to Julie and the wrongful death of Kenneth. On 4 September 2018, Defendant filed his answer and a motion, as of right, to transfer venue to Pender County Superior Court. Plaintiffs consented to Defendant's motion to transfer, and on 26 September 2018, the trial court entered a consent order transferring the case to Pender County Superior Court.

On 1 July 2019, Defendant filed his motion for summary judgment. Defendant argued, *inter alia*, that Plaintiffs' claims were barred by statutory immunity. On 11 September 2019, Plaintiffs filed their response to Defendant's motion for summary judgment and moved for summary judgment in their favor.

The parties' competing motions for summary judgment came on for hearing on 16 September 2019, before the Honorable Andrew T. Heath. On 7 October 2019, the trial court entered its order denying both motions for summary judgment. Defendant timely appealed.

### Interlocutory Jurisdiction

The denial of a motion for summary judgment is not a final judgment, but rather is interlocutory in nature. *See Cushman v. Cushman*, 244 N.C. App. 555, 559, 781 S.E.2d 499, 502 (2016). "Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). However, an interlocutory appeal "may be taken from [a] judicial order or determination of a judge of a superior or district court . . . which affects a substantial right claimed in any action or proceeding[.]" N.C. Gen. Stat. § 1-277(a) (2019); *see also id.* § 7A-27(b)(3)(a). "A substantial right is one affecting or involving a matter of substance as distinguished from matters of form: a right materially affecting those interests which a person is entitled to have preserved and protected by law: a material right." *Bowling v. Margaret R. Pardee Mem'l Hosp.*, 179 N.C. App. 815, 818, 635 S.E.2d 624, 627 (2006) (citation and internal quotation marks omitted), *disc. review denied*, 361 N.C. 425, 648 S.E.2d 206 (2007).

As a general rule, claims of immunity affect a substantial right, and therefore merit immediate appeal. *See Farrell v. Transylvania Cty. Bd. of Educ.*, 199 N.C. App. 173, 176, 682 S.E.2d 224, 227 (2009). Nonetheless, a party claiming the protection of statutory immunity must satisfy "all of the requirements" of the statute granting the claimed immunity in order to establish a substantial right entitling him to an immediate appeal. *Wallace v. Jarvis*, 119 N.C. App. 582, 585, 459 S.E.2d 44, 46, *disc. review denied*, 341 N.C. 657, 462 S.E.2d 527 (1995).

The parties assert that the case at bar is governed by N.C. Gen. Stat. § 143B-1413, which provides:

> (a) Except in cases of wanton or willful misconduct, a communications service provider, and a 911 system provider or next generation 911 system provider, and their employees, directors, officers, vendors, and agents are not liable for any damages in a civil action resulting from death or injury to any person or from damage to property incurred by any person in connection with developing, adopting, implementing, maintaining, or operating the 911 system or in complying with emergency-related information requests from State or local government officials. This section does not apply to actions arising out of the operation or ownership of a motor vehicle. The acts and omissions described in this section include, but are not limited to, the following:
>
> > (1) The release of subscriber information related to emergency calls or emergency services.
> >
> > (2) The use or provision of 911 service, E911 service, or next generation 911 service.
> >
> > (3) Other matters related to 911 service, E911 service, or next generation 911 service.
> >
> > (4) Text-to-911 service.
>
> (b) In any civil action by a user of 911 services or next generation 911 services arising from an act or an omission by a PSAP, and the officers, directors, employees, vendors, agents, and authorizing government entity of the PSAP, in the performance of any lawful and prescribed actions pertaining to their assigned job duties as a telecommunicator. The plaintiff's burden of proof shall be by clear and convincing evidence.

N.C. Gen. Stat. § 143B-1413.

The parties agree that Defendant is an employee of "a 911 system provider," pursuant to Section 143B-1413(a). *Id.* However, upon careful review of Section 143B-1413, and the applicable statutory definitions contained in that chapter, we disagree.

We first note that the first portion of subsection (b) is a sentence fragment, and the period after "telecommunicator" appears to be an error. Subsection (b) was added by a 2015 amendment, which read:

> In any civil action by a user of 911 services or next generation 911 services arising from an act or an omission by a PSAP, and the officers, directors, employees, vendors, agents, and authorizing government entity of the PSAP, in the performance of any lawful and prescribed actions pertaining to their assigned job duties as a 911 or public safety telecommunicator or dispatcher at a PSAP or at any public safety agency to which 911 calls are transferred from a primary PSAP for dispatch of appropriate public safety agencies, the plaintiff's burden of proof shall be by clear and convincing evidence.

2015 N.C. Sess. Laws 1217, 1220, ch. 261, § 3.

This subsection was amended in 2019, when the phrase "911 or public safety telecommunicator or dispatcher at a PSAP or at any public safety agency to which 911 calls are transferred from a primary PSAP for dispatch of appropriate public safety agencies" was replaced by "telecommunicator." 2019 N.C. Sess. Laws ___, ___, ch. 200, § 7(j). The definition of "telecommunicator" was also adopted as part of the same session law. *Id.* § 7(a). The 2019 amendment included a period instead of a

comma after "telecommunicator," thus creating the sentence fragment. But despite this error in punctuation, the meaning of the statute is clear.

For the purposes of this statute, a "911 system provider" is defined as "[a]n entity that provides an Enhanced 911 or NG911 system *to a PSAP*." N.C. Gen. Stat. § 143B-1400(5) (emphasis added). A PSAP—a "[p]ublic safety answering point"—is defined as "[t]he public safety agency that receives an incoming 911 call and dispatches appropriate public safety agencies to respond to the call." *Id.* § 143B-1400(25). A telecommunicator is a "person qualified to provide 911 call taking employed by a PSAP. The term applies to 911 call takers, dispatchers, radio operators, data terminal operators, or any combination of such call taking functions in a PSAP." *Id.* § 143B-1400(28a). By the plain language of these statutory definitions, Defendant—as a 911 telecommunicator—is "employed by a PSAP," rather than a 911 system provider.

Section 143B-1413(b) also does not provide statutory immunity to PSAPs or their employees. Subsection (b) provides, in pertinent part, that "[i]n any civil action by a user of 911 services . . . arising from an act or an omission by a PSAP" and its employees "pertaining to their assigned job duties as a telecommunicator[, t]he plaintiff's burden of proof shall be by clear and convincing evidence." *Id.* § 143B-1413(b). This does not grant employees of PSAPs, such as Defendant, any statutory immunity; instead, it provides a heightened burden of proof that any prospective

plaintiff must meet in a suit against an employee of a PSAP under Section 143B-1413(b).

Simply put, the statutory immunity that Defendant claims is unavailable to 911 telecommunicators under the plain language of Section 143B-1413. Where a statute's "language is clear and unambiguous, . . . we are not at liberty to divine a different meaning through other methods of judicial construction." *Haarhuis v. Cheek*, 261 N.C. App. 358, 366, 820 S.E.2d 844, 851 (2018) (citation and internal quotation marks omitted), *disc. review denied*, 372 N.C. 298, 826 S.E.2d 698 (2019). This Court must apply the law as enacted by the legislature. Thus, if the statutory immunity that Defendant seeks is to be provided under our laws, it is not for this Court to provide it. *See id.* Such is the province of the General Assembly, and we defer to its judgment.

## *Conclusion*

Defendant is unable to satisfy "all of the requirements" of Section 143B-1413 to obtain statutory immunity. *Wallace*, 119 N.C. App. at 585, 459 S.E.2d at 46. We are therefore unable to conclude that Defendant has established that the trial court's denial of his motion for summary judgment affected a substantial right entitling him to an immediate appeal. Accordingly, we dismiss Defendant's appeal as interlocutory.

DISMISSED.

Judges STROUD and DIETZ concur.